NOLAND COMPANY, Inc., Appellant,

v.

ALLIED CONTRACTORS, INCORPO-RATED, and Maryland Casualty Company, Appellees.

No. 7925.

United States Court of Appeals Fourth Circuit.

Argued Nov. 3, 1959.

Decided Dec. 24, 1959.

918

Alexander M. Heron, Washington, D. C. (William A. Fisher, Jr., Baltimore, Md., on the brief) for appellant.

T. Thornton Murray, Baltimore, Md., for appellees.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOPER, Circuit Judge.

This suit under the Miller Act, 40 U.S.C. §§ 270a, 270b, 270c, and 270d, was brought by Noland Company, Inc. to recover the sum of $1,033.36 for materials furnished by Noland to Thomas Electric Company, a subcontractor of Allied Contractors, Inc., the prime contractor under two Government contracts for the construction of Nike I Project Controlled Area and Nike I Project Launching Area at Davidsonville, Maryland. The defendants were Allied Contractors and its surety, Maryland Casualty Company. They defended chiefly on the ground that the suit was barred as to certain items of the claims by the limitations of § 270a of the statute.

There were six shipments under each contract, beginning on December 12, 1954 and ending March 25, 1955 under the first contract, and beginning December 28, 1954 and ending April 6, 1955 under the second contract. On May 5, 1955, Noland notified Allied by registered mail of its claim for the material furnished; and the present suit was brought by Noland within one year of the final settlement between the United States and Allied, as required by § 270b (b), as amended by the act of Congress of August 4, 1959.

The statute § 270b(a) provides that every person who has furnished labor or material in the prosecution of the work provided for in a government contract for the construction of a public building or public works and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or material was furnished for which such claim is made, shall have the right to sue on the payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment *provided*, however, that any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor shall have a right of action on the bond upon giving written notice to the contractor within ninety days from the date on which such person performed the last of the labor or

furnished or supplied the last of the material for which the claim is made.

Noland had no contractual relationship with the prime contractor but based its claim on a direct contractual relationship with Thomas Electric Company, a subcontractor. It was first objected by the defendants that Noland had no such relationship with the subcontractor because the goods were furnished from time to time over the counter, so to speak, without any formal contract between Noland and Thomas. This objection was quickly and correctly disposed of by the District Judge since goods purchased on open account necessarily involve a contract between the buyer and seller and it has been so held in cases under the statute. See United States, to Use of Noland Company, Inc. v. Maryland Casualty Co., D.C.Md., 38 F.Supp. 479, 482; American Casualty Co. of Reading, Pa. v. Southern Materials Co., 4 Cir., 261 F.2d 197.

The real controversy between the parties centers on the fact that some of the deliveries of material were made more than ninety days prior to the notice from Noland to Allied on May 5, 1955. It is contended that there can be no recovery from the bonding company for these goods, and the District Judge accepted this view, and limited recovery to such of the materials as were furnished within the ninety-day period prior to the giving of the statutory notice. He held that the notice provision of the statute was enacted for the protection of the general contractor and that this purpose would be defeated if the materialman should be allowed to keep the right of action alive indefinitely by making a series of independent sales without knowing how much material would be needed or how long the subcontract would run. He was impressed with the similarity of the language of § 270b in regard to the notice with the wording of the provision for a ninety-day notice in the Maryland Mechanics Lien Act, art. 63, § 11 of the Maryland Code of 1957, and with the construction of the Maryland statute by the Maryland Court of Appeals. The Maryland statute provides that if the *contract* for furnishing materials shall have been made with any other person except the owner, the person furnishing materials shall not be entitled to a lien unless within ninety days after furnishing the same he shall give notice in writing to the owner. In construing this statute in Brunt v. Farinholt-Meredith Co., 121 Md. 126, 131, 88 A. 42, the court said that the purpose of the notice was to afford the owner an opportunity to protect his property against liens and that, in the absence of an express contract, the character of the act, the time within which the materials were furnished and the object of the materials may afford proper grounds for the presumption that the materials were furnished with reference to an understanding from the beginning that such materials would be furnished if required by the builder; and in such case the notice dates from the last item in the account, but, where the materials are furnished for separate and distinct purposes or at different times and at considerable intervals or under distinct contracts or orders, although used in executing one and the same contract with the owner, no such presumption will arise, and the right to the lien must date from the time of furnishing the different parcels of material and not from the last item in the account. Otherwise, the court said, the materialman would be able to extend the time of giving notice for a delivery of goods under one contract by counting from the time of delivery under a subsequent contract, and this would sometimes afford the materialman an opportunity to defraud the owner.

It can not be denied that there is similarity between the notice provisions in the Miller Act and in the mechanics lien law of Maryland and that a reasoned argument may be made that the same construction should be given to both.

It may be noted, however, that in Trustees of German Lutheran Evangelical St. Matthew's Congregation v. Heise & Company, 44 Md. 453, 469, where the construction of the notice pro-

vision in the mechanics lien law of Maryland was first laid down in 1875, emphasis was laid upon the term *contract* between the builder and the supplier of materials and the notice was held to run from the completion of each distinct contract or order. The notice provision as to the subcontractor in the Miller Act, on the other hand, speaks of a *contractual relationship* between the contractor and the subcontractor, which is broad enough to cover a series of separate contracts or orders relating to the same project.

▮ Doubtless the acts of Congress, which find their last expression in the Miller Act, were suggested by the mechanics lien statutes of the states, but the state statutes differ in their specific terms and are ordinarily strictly construed for the protection of the property owner whose contacts are confined for the most part to the general contractor. Hence, the decisions which interpret these state enactments can afford only very general assistance in construing the federal law. See American Surety Co. v. Lawrenceville Cement Co., C.C.D.Me., 110 F. 717, 719.

▮▮ In any event, it is clear that the construction of the Maryland statute by the Maryland court is not binding upon a federal court in construing the federal statute, and we are impressed by the fact that no decision adopting the narrower rule with respect to notice under the Miller Act has occurred during the long period since 1935, when the notice provision was inserted by amendment.[1] Moreover, the Miller Act lends itself to the alternate construction that if all the goods in a series of deliveries by the materialman to a subcontractor are used on the same government project, the notice is in time as to all of the deliveries if it is given within ninety days from the last delivery. As was said in United States for Use and Benefit of J. A. Edwards & Co., Inc. v. Bregman Construction Corp., D.C.E.D.N.Y., 172 F. Supp. 517, 522 (which was handed down subsequent to the decision in the court below), with respect to the provision in the Miller Act:

"* * * The 90 day period is not stated to be measured from the date of the last delivery of material under an entire contract or on a running account or under each separate order. The Miller Act contemplates one such notice within 90 days from the furnishing of the last material furnished in the prosecution of the prime contract from which claim is made. If the material is so furnished pursuant to one entire contract, obviously the measuring date will be the date when the last material is so furnished. If the material is furnished pursuant to a series of separate contracts, the measuring date will be the date when the last material is furnished under the last contract. This is the internal sense of the Miller Act. It should be construed sensibly and its plain purposes should not be defeated by a narrow interpretation."[2]

▮ We are in accord with this construction of the statute. It is true that the notice provision of the Miller Act is designed to afford protection to the prime contractor by fixing the date beyond which, in the absence of notice, he

1. In the following cases the question now under consideration was not discussed but in each of them it was held that a notice given within ninety days from the last delivery of material was timely with respect to all previous deliveries of material to the general contractor: Apache Powder v. Ashton Co., 9 Cir., 264 F.2d 417; Bruce Construction Corp. v. United States, for Use of Westinghouse Elec. Supply Co., 5 Cir., 242 F. 2d 873; United States, for Use of West-inghouse Elec. Supply Co. v. Fourt Const. Co., D.C., 131 F.Supp. 584, affirmed 10 Cir., 235 F.2d 433; United States, for Use and Benefit of Magnolia Petroleum Co. v. Core & Planche, D.C.W.D.La., 58 F.Supp. 607, affirmed 5 Cir., 153 F.2d 527.

2. In this case, unlike the case at bar, the court found that the New York lien law, properly construed, did not support the prime contractor's contention.

will not be liable for the subcontractor's debts; but this purpose, although important in itself, is subsidiary to the main purpose of the act to protect those whose labor and materials enter into the prosecution of the work; and if there be any ambiguity in the provisions relating to the minor purpose, it should be resolved in support of the main object of the law. We believe this construction to be in harmony with the repeated decisions that hold that the statute should be liberally construed so as to effect its salutary purpose. United States for Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 216, 77 S.Ct. 793, 1 L.Ed.2d 776; Clifford F. MacEvoy v. United States, for Use and Benefit of Calvin Tomkins Co., 322 U.S. 102, 107, 64 S.Ct. 890, 88 L.Ed. 1163; Ross Engineering Co. v. Pace, 4 Cir., 153 F.2d 35, 46.

Reversed and remanded.