327 F.2d 590
 UNITED STATES of America, for the Use and Benefit of MILLER
& BENTLEY EQUIPMENT COMPANY, Inc., Appellant,
v.
James H. KELLEY, (Kelly), United Pacific Insurance Company,
Maurice Ramage and Fred Ayala, Appellees.
 No. 18825.
 United States Court of Appeals Ninth Circuit.
 Jan. 24, 1964.
 
 Charles E. Cole, Fairbanks, Alaska, for appellant.
 Kobin & Meyer and Paul R. Meyer, Portland, Or., and McNealy & Merdes, Fairbanks, Alaska, for appellees.
 Before JERTBERG, MERRILL and KOELSCH, Circuit Judges.
 MERRILL, Circuit Judge:
 
 
 1
 Miller & Bentley (use plaintiff), as supplier of equipment to a subcontractor on a Government project in Alaska, has brought this action under the Miller Act, 40 U.S.C. 270a, 270b, against the general contractor and his surety for unpaid rental of the equipment supplied. Judgment for the defendants was rendered upon the ground that the use plaintiff had not given notice of its claim to the contractor within the 90-day period prescribed by the Miller Act.[1] Upon appeal the sole issue is whether the district court erred in so ruling.
 
 
 2
 The equipment involved was rented to the subcontractor by the use plaintiff, and the district court properly concluded that under such circumstances the notice period ordinarily runs from the time the equipment was last available for use on the project. United States ex rel. Carter-Schneider-Nelson, Inc. v. Campbell (9 Cir. 1961), 293 F.2d 816, cert. denied (1962)368 U.S. 987, 82 S.Ct. 601, 7 L.Ed.2d 524.
 
 
 3
 The subcontract upon which the furnished equipment was used was terminated January 13, 1959. Use plaintiff was not notified of this fact. The district court, however, found that as a reasonably prudent supplier it should have learned of it by February 15th. The use plaintiff gave its Miller Act notice to appellees on April 28, 1959. The question here presented is as to the date from which the 90-day notice period starts to run. The district court held that it started to run January 13th, and that notice accordingly came too late. The use plaintiff contends it should not have started to run until February 15th, and that its notice accordingly was timely.
 
 
 4
 We agree with the district court. After the termination of the subcontract equipment supplied to the subcontractor was not available for use on the project.
 
 
 5
 The use plaintiff relies on United States for use of Westinghouse Electric Supply Co. v. Endebrock-White Company (4 Cir. 1960), 275 F.2d 57, for the proposition that proof of actual use on the project is not necessary if the materials were furnished for such use and if the supplier, in good faith, reasonably believed that such use was intended by the subcontractor to whom the materials were supplied.
 
 
 6
 Accepting, arguendo, that application of this rule to the facts of this case would have justified the recovery of rental beyond January 13th, if any recovery at all were permitted, we do not see how it can serve to extend the notice period.
 
 
 7
 It is clear that an important purpose of the 90-day notice provision is to protect the general contractor and his surety, and to encourage and reassure the general contractor in the prompt payment of the subcontractor after 90 days have elapsed. As this court pointed out in Bowden v. United States for use of Malloy (9 Cir. 1956), 239 F.2d 572, 577-578, cert. denied (1957) 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909:
 
 
 8
 'It cannot be doubted that one purpose of Congress in enacting the Miller Act was the protection of laborers and materialmen. But it is clear, too, we think, from the mechanics provided in the Act for its operation and the accomplishment of its purpose, that it was the intent of Congress to fix a time limit after which the prime contractor could make payment to the subcontractor with certainty that he would not thereafter be faced by claims of those who had supplied labor and materials to the subcontractor.'[2]
 
 
 9
 Here the district court took notice of the general proposition that the Miller Act is to be liberally construed in favor of those furnishing labor and materials. Apache Powder Co. v. Ashton Co. (9 Cir. 1959), 264 F.2d 417.[3] Accepting, arguendo, that extreme circumstances might be found equitably to excuse a failure to give notice strictly within the time provided, the district court held that such circumstances did not exist here. We agree. As the district court pointed out, had the use plaintiff acted diligently it would have had ample warning that its 90-day notice period had commenced to run on January 13th and ample time to give its notice within that period.
 
 
 10
 Under such circumstances to hold timely the notice filed after that 90-day period would be to disregard unjustifiably the statutory purpose of protecting the general contractor.
 
 
 11
 Judgment affirmed.
 
 
 
 [1]
 40 U.S.C. 270b(a) provides in part
 'Any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made * * *.'
 
 
 [2]
 See also Noland Co. v. Allied Contractors, Inc. (4 Cir. 1959), 273 F.2d 917, 921; McWaters & Bartlett v. United States for use of Wilson (10 Cir. 1959), 272 F.2d 291, 295; United States for use of McGregor Architectural Iron Co. v. Merritt-Chapman & Scott Corp. (M.D.Pa.1960), 185 F.Supp. 381, 383
 
 
 [3]
 See also Noland Co. v. Allied Contractors, Inc., supra. It has been recognized, however, that this desirability of liberal construction cannot justify ignoring the plainly expressed statutory prerequisites-- including the notice of claim requirement-- to a valid claim against the general contractor. Bowden v. United States for use of Malloy, supra; United States for use of J. A. Edwards & Co. v. Peter Reiss Construction Co. (E.D.N.Y.1959) 174 F.Supp. 264, 266, aff'd (2 Cir. 1959) 273 F.2d 880, 78 A.L.R.2d 409, cert. denied (1960) 362 U.S. 951, 80 S.Ct. 864, 4 L.Ed.2d 869; cf. Clifford F. MacEvoy Co. v. United States for use of Calvin Tomkins Co. (1944) 322 U.S. 102, 107, 64 S.Ct. 890, 88 L.Ed. 1163