Argued and submitted July 20, reversed and remanded December 26, 1990, reconsideration denied February 13, petition for review denied April 2, 1991 (311 Or 261)

## CITY OF THE DALLES, OREGON
ex rel Taylor Electric Supply, Inc.,
*Appellant,*

*v.*

## D'LECTRIC COMPANY, INC.,
and Fairmont Insurance,
*Respondents.*

(CC88-24; CA A62764)

803 P2d 771

Roger J. Leo, Portland, argued the cause for appellant. With him on the briefs was Parks, Allen, Livingston & Greif, Portland.

Mark P. Pihl, Portland, argued the cause for respondents. With him on the brief were Robert T. Scherzer and Grenley, Rotenberg, Laskowski, Evans & Bragg P.C., Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Plaintiff Taylor Electric Supply, Inc., furnished materials to defendant D'Lectric Company, the electrical subcontractor for the City of The Dalles' Mid-Columbia Senior Center construction project. D'Lectric did not pay plaintiff in full, and plaintiff brought this action, pursuant to ORS 279.526 *et seq,* on the prime contractor's bond issued by defendant Fairmont Insurance. The case was tried to the court, which held that plaintiff was not entitled to recover. It appeals, and we reverse.

We quote the relevant facts from the trial court's opinion letter:

"The City of The Dalles employed Trimble Commercial Contractors as the prime contractor in the construction of the Mid-Columbia Senior Center. Fairmont Insurance, as Trimble's surety, issued a Performance, and Labor and Material Bond to secure performance and payment of all subcontractors.

"Trimble subcontracted to D'Lectric Company to perform all the necessary electrical work on the project. Consequently, D'Lectric opened an account with Taylor Electric for electrical equipment and supplies to be incorporated into the project.

"John Russell, an electrician employed by D'Lectric on the Senior Center project, testified that sometime in early December, 1986, ten or eleven light fixtures were delivered to the job site. The trim were packaged separately from the light fixtures. Three of the trim were slightly damaged with bent rims. Mr. Russell hammered out the dents and installed the repaired trim. At that time, Mr. Russell asked another electrician to reorder three new trim to replace the installed, but imperfect trim. The three replacement trim, however, never arrived. No evidence was presented showing whether or not the trim were actually reordered * * * at that time.

"On December 13, 1986 a Certificate of Substantial Completion was issued establishing December 15, 1986 as the date of substantial completion. A Certificate of Temporary Occupancy was issued on December 16, 1986. The final electrical inspection was made on December 23, 1986.

"On February 2, 1987, D'Lectric ordered three Halo trim, at a cost of $208.22, presumably to replace the damaged, installed trim. The trim were delivered the following day. The

replacement trim, however, were never installed. Consequently, the damaged trim were never replaced and are still in place in the Senior Center. This litigation centers on the characterization of these three trim.

"D'Lectric has since become insolvent and has been discharged in bankruptcy. The balance owing to Taylor Electric is $15,920.57. Pursuant to ORS 279.526, plaintiff filed suit to recover payment from the performance bond.

"On April 27, 1987 plaintiff sent notice of its claim to Trimble. However, due to insufficient postage and according to company policy, the letter was not accepted by Trimble. A second notice was mailed to Trimble and the City of The Dalles on June 3, 1987, and to Fairmont on June 4, 1987."

■ The issue is whether either of plaintiff's notices to Trimble satisfies and was timely under ORS 279.528(1):

"The notice of claim required by ORS 279.526 shall be sent by registered or certified mail or hand delivered no later than 120 days after the day the person last provided labor or furnished materials. The notice may be sent or delivered to the contractor at any place the contractor maintains an office, conducts business or at the residence of the contractor."

Under ORS 279.526, service of a notice that complies with ORS 279.528 is a condition precedent to bringing an action.

The trial court concluded that neither notice sufficed. It reasoned that the April 27 notice did not meet the statutory requirements, because adequate postage to assure delivery and receipt is implicitly required. The court then concluded that the June 3 notice also did not satisfy the statute. Although that notice was served within 120 days after plaintiff's furnishing of the replacement trim, the court noted that all other materials had been furnished more than 120 days before the notice; the court then concluded, *inter alia,* that the trim was "corrective in nature and [was] not furnished as part of the original contract" and, therefore, that the "delivery of the three halo trim to replace the previously installed trim does not constitute the furnishing of materials within the context of ORS 279.528(1), and fails to extend the notification period." Plaintiff assigns error to the court's conclusions concerning both notices. Because we agree with plaintiff that the June notice complies with ORS 279.528, we do not reach the questions relating to the earlier notice.

ORS 279.528 was amended by Or Laws 1985, ch 526, § 2, to make it similar to the notice and limitations provisions of the federal Miller Act.[1] Because no Oregon cases have dealt with the issue since the 1985 amendment was adopted, the trial court and the parties relied on federal cases applying the Miller Act provisions. Those cases have taken three general views.

The first is exemplified by *United States v. Western Electric Co.,* 337 F2d 568, 572 (9th Cir 1964), where the court said that the

> "test to be applied is whether the work was performed and the material supplied as a 'part of the original contract' or for the 'purpose of correcting defects, or making repairs following inspection of the project.' "

Under that view, the periods for notice and for bringing an action cannot be extended by mere corrective performance or deliveries.

The view at the other extreme is reflected by *Trinity Universal Insurance Company v. Girdner,* 379 F2d 317, 318 (5th Cir 1967). The court said, in construing 40 USC § 270b(b):

> "We have studied the language of the statute, the legislative history of its 1959 amendment, and the cases. Particularly in view of the liberal construction which must be given the Miller Act, we are convinced that the 'last labor or materials' language is broad enough to include work performed upon the demand of the government to correct defects in the work as originally completed. There is no contention that this work was a sham to extend the period of limitation." (Footnotes omitted.)

The third view is a combination of the other two, in which the courts have paid lip service to the test formulated in *Western Electric Co.* but have found almost no work or materials that fail to qualify as "part of the original contract" under that test. In *United States v. Andrews,* 406 F2d 790 (4th Cir 1969), the plaintiff gave notice pursuant to section 270b(a)

---

[1] 40 USC § 270b(a) requires that notice to the contractor be given "within ninety days from the date on which [the claimant] did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made." 40 USC § 270b(b) provides that an action must be brought within one year "after the day on which the last of the labor was performed or material was supplied."

only after it had made a post-inspection delivery of two valves that were required by the original contract but had not been provided during the original performance. The court said:

> "The applicable legal test, as the parties correctly perceive and as the Ninth Circuit stated in United States ex rel. Austin v. Western Elec. Co., 337 F.2d 568, 572-573 (9 Cir. 1964), is 'whether the work was performed and the material supplied as a " 'part of the original contract' " or for the " 'purpose of correcting defects, or making repairs following inspection of the project.' " It seems plain to us that the installation of the two missing valves cannot be characterized as a mere correction of a defect. The fact that the valves were called for by both the primary contract and the subcontract and were not furnished till January 17, 1967, is dispositive of the issue, notwithstanding the Government's acceptance of the premises at an earlier date under the mistaken impression that the work had been completed. The valves were installed by Wade at no extra charge to the Government or to the general contractor. Neither the contractor nor the subcontractor was ever in doubt as to its obligation to install the valves in order to finish the job.
>
> "* * * * *
>
> "It is our conclusion that the contract was not completed until the valves were installed, and that their delivery in January is the critical date from which to measure the Miller Act limitation period.
>
> "* * * * *
>
> "We realize that the rule we enforce in this case involves a hazard to the primary contractor whose unbonded subcontractor later finds himself in embarrassing financial straits and is unable to pay the supplier. This danger, of course, always attends a general contractor, regardless of any dispute over the timeliness of the materialman's notice; but as this court, speaking through Judge Soper in Noland Co. v. Allied Contractors, Inc., 273 F.2d 917, 920-921 (4 Cir. 1959), had occasion to say:
>
>> " 'It is true that the notice provision of the Miller Act is designed to afford protection to the prime contractor by fixing the date beyond which, in the absence of notice, he will not be liable for the subcontractor's debts; but this purpose, although important in itself, is subsidiary to the main purpose of the act to protect those whose labor and materials enter into the prosecution of the work * * *.'
>
> "Prime contractors well understand that they operate under

the overhanging threat of Miller Act obligations that may arise against them if their subcontractors should fail to pay workers or materialmen. Prime contractors can readily protect themselves against their subcontractors' defaults by making appropriate payment reservations or by exacting performance bonds; and we understand that these precautions are prevailing practices in the construction industry." 406 F2d at 792. (Some citations omitted.)

The parties express disagreement about which of the views is favored by the weight of authority.[2] However, the question in our interpretation of the Oregon statute is which of the views is the most persuasive, rather than which has proved persuasive to the greater number of other courts. We agree, generally, with the interpretation in *Trinity Universal Insurance Company v. Girdner, supra.* The line between the "requirements of the original contract" and replacement or corrective efforts, as some courts that have attempted to draw it have recognized, is more often than not elusive or fictitious. Moreover, the distinction is not meaningful in the light of the statutory language and purpose. *See State ex rel Thuney Log. v. Fireman's Ins.,* 254 Or 145, 458 P2d 413 (1969). The relevant inquiry under the statute is when the last labor or materials were provided or furnished. We conclude that, if replacements or corrective parts are the last materials furnished in connection with the supplier's contractual performance, their delivery is what triggers the running of the notice period under the statute.

■     We need not decide whether, as suggested in *Trinity Universal Insurance Company v. Girdner, supra,* an exception should be read into the statutes for "sham" deliveries, made solely to extend the notice period. There is no question of that here. The trial court found that the replacement trim was ordered by D'Lectric in connection with the project and was delivered by plaintiff pursuant to that order. The fact that D'Lectric did not use the trim is immaterial.

We hold that the replacement trim constituted materials that plaintiff "last furnished less than 120 days" before it

---

[2] Defendants argued a fourth view in the trial court—that the date of substantial completion was the last date that triggered the running of the notice period. We do not understand defendants to renew that argument here. In any event, a variation of that argument was apparently rejected in *United States v. Western Electric Co., supra,* and it is wholly at odds with the language of the Oregon statute.

gave the June notice, and that the notice therefore complied with and was timely under ORS 279.528.

Reversed and remanded.