**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RAMONA EQUIPMENT RENTAL, INC., for the use of the United States on behalf of a California corporation, *Plaintiff-Appellee*, | No. 12-55156 <br><br> D.C. No. 3:08-cv-01685-H-MDD |
| v. | |
| CAROLINA CASUALTY INSURANCE COMPANY, a Florida corporation; CANDELARIA CORPORATION, an Arizona corporation; OTAY GROUP, INC., a California corporation, *Defendants-Appellants*. | OPINION |

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted
October 11, 2013—Pasadena, California

Filed June 20, 2014

Before: Richard A. Paez and Andrew D. Hurwitz, Circuit
Judges, and Ralph R. Erickson, Chief District Judge.[*]

Opinion by Judge Paez;
Dissent by Judge Erickson

---

[*] The Honorable Ralph R. Erickson, Chief District Judge for the U.S. District Court for the District of North Dakota, sitting by designation.

## SUMMARY[**]

### Miller Act

The panel affirmed the district court's judgment after bench trial in favor of the plaintiff in an action under the Miller Act.

The plaintiff alleged that a subcontractor on a federal project failed to pay for equipment rented on an open book account. The panel held that the plaintiff's notice of demand, served on the prime contractor within ninety days of the last day on which the plaintiff furnished the equipment, was timely as to equipment furnished more than ninety days before the notice. Agreeing with the First, Fourth, and Fifth Circuits, the panel held that if all the goods in a series of deliveries by a supplier on an open book account are used on the same government project, then the ninety-day notice is timely as to all of the deliveries if it is given within ninety days from the last delivery.

The panel also affirmed the district court's determination of when the plaintiff's duty to mitigate damages arose, as well as the district court's award of contractual prejudgment interest.

Dissenting, Judge Erickson wrote that he would reverse the district court's judgment because, in light of the Miller Act notice provision's purpose of protecting the general contractor and its surety, the plaintiff's ninety-day notice was

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

not timely as to equipment furnished more than ninety days before the notice.  Judge Erickson wrote that he also would reverse as to mitigation of damages and prejudgment interest.

## COUNSEL

Robert J. Berens (argued) and Adam D. Melton, Phoenix, Arizona, for Defendants-Appellants.

James D. Crosby (argued) and Leah A. Plaskin, Klinedinst PC, San Diego, California, for Plaintiffs-Appellees.

## OPINION

PAEZ,  Circuit Judge:

Candelaria Corporation ("Candelaria"), a prime contractor on a federal construction project, Carolina Casualty Insurance Company ("CCIC"), its surety, and Otay Group, Inc. ("Otay"), a subcontractor (collectively, "Defendants"), appeal the district court's judgment in favor of Ramona Equipment Rental, Inc. ("Ramona"), Candelaria's supplier of rental equipment, in Ramona's action under the Miller Act, 40 U.S.C. §§ 3131–3134.  The suit involves Otay's failure to pay for equipment rented from Ramona on an open book account.  As required by the Miller Act, Ramona served Candelaria with notice of demand for payment within ninety days of the last day on which it furnished the equipment.  The critical issue in this appeal is whether Ramona's notice is timely as to rental equipment furnished more than ninety days before the notice.  We hold that it is, and affirm the district court's judgment.

I.

This dispute arises from a federal construction project known as ICE El Centro SPC - Perimeter Fence Replacement/Internal Devising Fence Replacement ( the "Project").  Candelaria was the prime contractor on the Project and, in tandem with CCIC, provided a payment bond as mandated by the Miller Act.  *See* 40 U.S.C. § 3131.  In December 2007, Otay entered into a subcontract with Candelaria agreeing to supply certain labor and equipment for the Project.  Shortly thereafter, Otay submitted, and Ramona approved, a credit application which established an open account for Otay to rent equipment from Ramona for use on the Project.  Under the terms of the credit application, rentals would be documented by a rental agreement and invoice.

Between December 2007 and June 2008, Otay and Ramona entered into eighty-nine rental agreements on credit, totaling $235,446.84.   On June 6, 2008, Candelaria terminated Otay's subcontract for cause.   At that time, Candelaria owed Otay over $500,000 for labor and equipment provided to the Project, and Otay had paid Ramona only $17,658.57 on the outstanding rental agreements.

On July 25, 2008, Ramona served a ninety-day notice of its claim for payment on Candelaria's payment bond pursuant to 40 U.S.C. §  3133(b)(2).[1]  Following service of the notice,

---

[1] Section 3133(b)(2) provides:  "[a] person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last

in September 2008, Ramona filed a complaint in district court under the Miller Act to recover $393,567.09 in unpaid equipment rentals plus monthly service charges. At trial, Defendants argued that Ramona's ninety-day notice was untimely as to all rental equipment furnished to the project more than ninety days before service of the notice on July 25, 2008. Defendants also argued that Ramona failed to mitigate its damages and that Ramona was not entitled to recover compound prejudgment interest, which the credit application called "service charges."

The district court rejected Defendants' first argument and concluded that, in light of the open book account, the ninety-day notice covered all rental equipment furnished to the Project. The court, however, determined that Ramona's duty to mitigate damages arose as of June 10, 2008 (four days after Otay's termination by Candelaria) and barred recovery for invoices after that date. Finally, the court rejected Ramona's claim for compound prejudgment interest and awarded simple interest at the contractual rate of 1.5 %. Accordingly, on August 31, 2011, the district court entered judgment awarding Ramona $178,686.56 plus $106,516.64 in service charges and $114,081.28 in attorneys' fees. Defendants timely appealed.[2]

---

of the labor or furnished or supplied the last of the material for which the claim is made . . . ." 18 U.S.C. § 3133(b)(2).

[2] We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's findings of fact under Federal Rule of Civil Procedure 52(a)(1) for clear error and its legal conclusions de novo. *See Fisher v. Tucson Unified Sch. Dist.*, 652 F.3d 1131, 1136 (9th Cir. 2011); *see also United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc) (holding that factual findings are clearly erroneous where they are "illogical, implausible, or without support in inferences that may be drawn from facts in the record.").

II.

The Miller Act "represents a congressional effort to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protections they might receive under state statutes with respect to the construction of nonfederal buildings." *Mai Steel Serv. Inc. v. Blake Constr. Co.*, 981 F.2d 414, 416–17 (9th Cir. 1992) (internal citation omitted). To accomplish this beneficial purpose, the Miller Act is entitled to a liberal interpretation. *See United States ex rel. Sherman v. Carter*, 353 U.S. 210, 216 (1957); *see also United States v. W. Elec. Co.*, 337 F.2d 568, 572 (9th Cir. 1964). The Miller Act requires that laborers and materialmen with no direct relationship to the general contractor furnishing the payment bond, "giv[e] written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made." 40 U.S.C. § 3133(b)(2); *see United States ex rel. Water Works Supply Corp. v. George Hyman Constr. Co.*, 131 F.3d 28, 31–32 (1st Cir. 1997). This notice requirement "serves an important purpose: it establishes a firm date after which the general contractor may pay its subcontractors without fear of further liability to the materialmen or suppliers of those contractors." *Id.* at 32. Failure to comply with the ninety-day notice requirement is fatal to a Miller Act claim.

We have not addressed the precise issue presented by this appeal.[3] In the absence of controlling Ninth Circuit authority,

---

[3] In *Apache Powder Co. v. Ashton Co.*, we dealt with a ninety-day notice that demanded payment for material supplied more than ninety days before the notice. 264 F.2d 417, 418 (9th Cir. 1959). The dispute there,

the district court  turned to *Noland Co. v. Allied Contractors, Inc.*, 273 F.2d 917, 920 (4th Cir. 1959), for guidance.   In *Noland*, the Fourth Circuit considered a claim for six unpaid shipments sent by Noland, a supplier of electrical equipment, to a subcontractor on an open account.  *Id.* at 919.  Noland sent written notice under the Miller Act within ninety days of the last shipment.  *Id.* at 918.  The notice included claims for several shipments that were delivered more than ninety days before the notice.  *Id.*  The court held that the notice was timely as to all shipments, concluding that where there are multiple deliveries or contracts, "the measuring date will be the date when the last material is furnished under the last contract." *Id.* at 920.  Defendants acknowledge *Noland*, but argue that it is outdated and that we should adopt the reasoning of several more recent district court decisions that protect the prime contractor and surety from the risk of double payment.  Several of our sister circuits, however, have agreed with *Noland's* holding, as do we.

In *United States ex rel. A & M Petroleum, Inc. v. Sante Fe Engineers Inc.*, the Fifth Circuit concluded that notice within ninety days of the last delivery on a project involving multiple purchase orders—including orders made more than ninety days before the notice—was timely under the Miller Act.  822 F.2d 547, 548 (5th Cir. 1987).  Noting that this "seems to be the preferred interpretation" among the circuit courts, the Fifth Circuit held that under the Miller Act, a materialman or laborer need only give notice to a general contractor within ninety days of the last delivery or rendition of services, rather than after each unpaid delivery or provision of labor.  *Id.*  Thus, when there is an open account, a ninety-

---

however, centered on the form of the notice, and not whether the notice was timely for all deliveries covered by the notice.

day notice is timely even when it includes material furnished more than ninety days before the notice.

Similarly, in *Water Works Supply Corp.*, the First Circuit considered circumstances where the plaintiff extended a line of credit on an open book account for the purchase of pipe and piping materials. 131 F.3d at 30. In March 1995, the plaintiff served a ninety-day Miller Act notice relating to two outstanding invoices from November 1994 and January 1995. *Id.* The general contractor asserted that, notwithstanding the open book account, each order represented a separate contract with a separate ninety-day limit. *Id.* at 34. The court rejected this argument, noting that "the weight of the authority contradicts that position." *Id.* Rather, the First Circuit reasoned that although a strict reading of the notice provision might offer more protection to the general contractor, "the goal of a specific statutory provision must take a back seat to the purpose of the overall statute, which is to provide recovery for suppliers who have provided materials but not received compensation." *Id.* (citing *Noland*, 273 F.2d at 920–21). Accordingly, the court held that "[w]here claims are based on an open account theory, the ninety-day notice period for all of the deliveries begins on the date of the last delivery to the project." *Id.*[4]

---

[4] Although Defendants rely on the Second Circuit's opinion in *United States ex rel. J.A. Edwards & Co., Inc. v. Peter Reiss Construction Co.*, it involved circumstances distinguishable from those at issue here. 273 F.2d 880 (2nd Cir. 1959). That case addressed a series of unpaid deliveries in August, September and October 1956. *Id.* at 881. In March 1957, the plaintiff made an additional delivery which also went unpaid, and in April, served a Miller Act ninety-day notice seeking payment for the March delivery and the deliveries made in the prior year. *Id.* The Second Circuit held that, given the significant gap in deliveries, the 1957 delivery did not "revive a Miller Act liability long extinguished . . ." *Id.*

Here, the relationship between Otay and Ramona was governed by an open book account that allowed Otay to rent equipment from Ramona on an ongoing credit basis. Ramona continued to rent equipment to Otay for use at the Project until Candelaria terminated its subcontract on June 6, 2008, and, within ninety days of the last rental, Ramona served notice of its claim for payment on Candelaria. These circumstances are clearly analogous to those addressed by the First, Fourth and Fifth Circuits. Accordingly, we join our sister circuits and hold that if all the goods in a series of deliveries by a supplier on an open book account are used on the same government project, the ninety-day notice is timely as to all of the deliveries if it is given within ninety days from the last delivery.

Relying on several recent district court cases, the dissent asserts that the ninety-day notice requirement serves to protect the general contractor and its surety. Dissent at 14; *see e.g.*, *United States ex rel. Country Boys Feed & Farm Supply v. Eickelmann*, No. 08-3429-CV-S-GAF, 2010 WL 750059 (W.D. Mo. March 2, 2010); *United States ex rel. Robert DeFilippis Crane Serv. Inc. v. William L. Crow Constr. Co.*, 826 F. Supp. 647 (E.D.N.Y. 1993). Although we acknowledge that "an important purpose of the 90-day notice provision is to protect the general contractor and his surety," *United States ex rel. Miller & Bentley Equip. Co. v. Kelley*, 327 F.2d 590, 591 (9th Cir. 1964), the weight of circuit

---

at 881–82. The court, however, explicitly noted that it was "not here required to decide whether, when a materialman makes deliveries under a series of purchase orders so that each delivery is within 90 days of its predecessor, a notice given within 90 days of the last order or delivery will relate back to include the entire chain." *Id.* at 881. The issue in this case is precisely that which the Second Circuit declined to address in *J.A. Edwards.*

authority recognizes a broader purpose in the Miller Act.  In the end, the goal of the notice provision "must take a back seat to the purpose of the overall statute, which is to provide recovery for suppliers who have provided materials but not received compensation." *Water Works Supply Co.*, 131 F.3d at 34.

Moreover, contrary to Defendants' argument, there is no risk here of double liability to Candelaria.  *See United States ex rel. Blue Circle West, Inc. v. Tucson Mech. Contracting, Inc.*, 921 F.2d 911, 914 (9th Cir. 1990) (noting that the intent of the Miller Act notice requirement is, in part, to help general contractors to "avoid such double liability").  Rather, Candelaria has thus far avoided payment almost entirely, ultimately providing only $70,000 of the $600,000 due on Otay's subcontract.  We therefore affirm the district court's award of $178,686.56 in damages, holding that all amounts due for all the rental equipment furnished to Otay for construction of the project were properly included in the ninety-day notice.[5]

---

[5] Defendants also argue that equipment Ramona rented from third parties and then "re-rented" to Otay does not constitute materials "furnished or supplied" under the Miller Act. We disagree. The words "furnished or supplied" are not defined in the Miller Act and are therefore entitled to their ordinary meaning. *See Woods Constr. Co., Inc. v. Pool Constr. Co.*, 348 F.2d 687, 689 (10th Cir. 1965); *see also FDIC v. Meyer*, 510 U.S. 471, 476 (1994) ("In the absence of [a definition in the statute], we construe a statutory term in accordance with its ordinary or natural meaning"). We agree with the district court that these words should not be read to imply a requirement of ownership of the object being furnished or supplied. Moreover, Defendants' reliance on *Woods* is inapposite; *Woods* dealt with access to real property and not re-rented personal property. 348 F.2d at 689. Accordingly, all equipment rented before June 10, 2008 to Otay was properly included in Ramona's Miller Act claim.

III.

Defendants also argue that the district court erred in determining that Ramona's duty to mitigate damages arose only after June 10, 2008, four days after Candelaria terminated Otay's contract.  Reviewing the district court's factual determination regarding the reasonableness of Ramona's mitigation efforts for clear error, we find none. *See Jackson v. Shell Oil Co.*, 702 F.2d 197, 202 (9th Cir. 1983).

From December 2007 to June 2008, Ramona furnished equipment to Otay for the project and regularly invoiced Otay for the rentals.  Otay paid the first nine invoices through March 4, 2008, but by May 28, 2008, had paid only two of the remaining eighty invoices.  Recognizing that Otay was having financial difficulties, Candelaria made several attempts in May and June 2008 to meet with Otay representatives in order to determine a payment plan.  These efforts were unsuccessful and, on June 6, 2008, Candelaria terminated Otay for cause.  Ramona ceased renting equipment to Otay upon learning of the termination, but seventy-eight invoices remained unpaid in the amount of $218,329.23.

Defendants contend that because Ramona did not notify Candelaria of Otay's overdue payments, and did not cease equipment rentals when prior invoices went unpaid, it failed to properly mitigate damages.  "Where a party is entitled to the benefit of a contract and can save himself from a loss arising from a breach of it at a trifling expense or with reasonable exertions, it is his duty to do it . . . ." *Commodity Credit Corp. v. Rosenberg Bros. & Co.* 243 F.2d 504, 511 (9th Cir. 1957).  Here, the district court determined that

because Otay and Candelaria were still trying to resolve their business issues as of June 5, 2008, Ramona "had a good faith belief that Otay and Candelaria would resolve their issues and payment would be forthcoming from Otay."  The district court also found that Ramona and Otay had a long-standing business relationship and Otay was providing on-time payments to Ramona on another federal government contract during this time period, which, "add[ed] credence to Ramona's position that it expected Otay to also make payments on the [Project]."  Although Ramona failed to alert Candelaria to Otay's delinquency until seventy-eight invoices from Otay were overdue, this does not render the district court's conclusion—that Ramona had commercially reasonable justifications for choosing not to mitigate its damages prior to June 10, 2008—"illogical [or] implausible." *See Hinkson*, 585 F.3d at 1263.  Accordingly, we affirm the district court's ruling not to award damages for invoices submitted on or after June 10, 2008.

## IV.

Finally, Defendants assert that Ramona waived its right to collect service charges through its course of conduct, as Ramona did not assess service charges until June 30, 2008. This argument was raised for the first time in the district court in a post-trial motion to alter or amend the judgment.  The issue is waived. *See Beech Aircraft Corp. v. United States*, 51 F.3d 834, 841 (9th Cir. 1995) ("That Plaintiffs raised the issue in a post-judgment motion does not save this issue for appeal for the Plaintiffs . . . . Because Plaintiffs could have raised the issue at or before trial and because they have not presented any valid reason for not having done so, we decline to consider Plaintiffs' . . . argument.").  Accordingly, we

affirm the district court's award of contractual prejudgment interest (service charges).

**AFFIRMED**.

---

ERICKSON, Chief District Judge, dissenting:

I respectfully dissent. The Miller Act provides,

> [a] person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made.

40 U.S.C. § 3133(b)(2). This case involves a series of contracts under an open account. From January 2008 through July 2008, Otay paid only eleven of its eighty-nine invoices. Of the $706,917.62 Otay paid Ramona during the relevant time period, Otay allocated only $17,538.32 to this federal construction project. The remainder was allocated to a separate project. Ramona did not notify Candelaria until July 25, 2008 of the nonpayment. In the interim, Ramona assessed 1.5% monthly compounding interest on each outstanding balance.

A significant purpose of the 90-day notice provision in the Miller Act is to protect the general contractor and its surety. The potential extended duration of an open account relationship risks surprising the general contractor with an unforseen and possibly staggering obligation. Requiring a subcontractor to provide notice at 90-day intervals is not overly burdensome, comports with the purpose of the Miller Act, and lessens the risk that a subcontractor might delay notice of outstanding debt for a greater profit.

I join the other courts that have adopted the more stringent notice requirement advocated by Appellants. *See, e.g.*, *United States ex rel. Country Boys Feed and Farm Supply v. Eickelmann*, No. 08-3429-CV-S-GAF, 2010 WL 750059, at *5 (W.D. Mo. March 2, 2010) ("Generally, an open account should not be considered a contract for purposes of the notice provision. Rather, the separate orders of materials under the open account, which are typically represented in purchase orders or invoices, satisfy the underlying contract requirement." (internal citation omitted)); *United States ex rel. Robert DeFilippis Crane Serv. Inc. v. William L. Crow Constr. Co.*, 826 F.Supp. 647, 655 (E.D.N.Y. 1993) ("Where claims are based on a series of contracts, a claim must be made within 90 days from the date on which the supplier 'furnished or supplied the last of the material' for each underlying contract."); *see also United States ex rel. J.A. Edwards & Co. v. Peter Reiss Const. Co.*, 273 F.2d 880, 881–82 (2d Cir. 1959) ("[I]t would be wholly inconsistent with the purpose of the notice provision of the Miller Act . . . to hold that a shipment made on March 5, 1957, under an order of February 20, 1957, could revive a Miller Act liability long extinguished.").

I believe Ramona's July 25, 2008 notice of claim bars recovery for the forty-seven invoices issued prior to April 26, 2008.  Accordingly, I would reverse and remand for entry of judgment, reducing the damages by $113,508.46 for failure to provide the proper notice of claim.

Appellants also contend that Otay's prolonged delinquency on project-related payments should have put Ramona on notice of its need to mitigate damages.  I agree. By the time Otay's subcontract was terminated on June 6, 2008, seventy-eight invoices remained unpaid.

The general rule regarding a party's duty to mitigate damages provides:

> [W]here a party is entitled to the benefit of a contract and can save himself from a loss arising from a breach of it at a trifling expense or with reasonable exertions, it is his duty to do it; and he can charge the delinquent with such damages only as, with reasonable endeavors and expense, he could not prevent.

*Commodity Credit Corp. v. Rosenberg Bros. & Co.*, 243 F.2d 504, 511 (9th Cir. 1957).  Ramona allowed seventy-eight invoices to go unpaid, accruing a debt of $218,329.23 and an additional $175,658.57 in self-generated late fees.

The district court failed to consider, as a reasonable mitigating measure, Ramona's failure to timely notify Candelaria of Otay's growing debt. Ramona concedes the very act of filing a Miller Act claim can constitute "available and judicially honorable means of mitigating" losses. *United States ex rel. Balboa Ins. Co. v. Algernon Blair, Inc.*,

795 F.2d 404, 409 (5th Cir. 1986).  For a Miller Act obligee to have the opportunity to mitigate damages, however, an aggrieved party must actually submit the claim.  Regardless of the statutory notice requirements, sending Appellants notice at any time in the months between Otay's original default and its ultimate termination would surely constitute reasonable exertion "at a trifling expense." *See Commodity Credit Corp.*, 243 F.2d at 511.  Moreover, this measure could have prevented hundreds of thousands of dollars in "service charges" and litigation expenses.

The district court's determination that the duty to mitigate damages did not arise until June 10, 2008 was clearly erroneous. Providing notice to Appellants of Otay's default was a reasonable form of mitigation available to Ramona prior to termination of the subcontract.  I would reverse and remand for further proceedings on this issue.

Appellants also assert Ramona waived its right to service charges through its course of conduct.  Each rental agreement provides that a customer "agrees to pay a monthly service charge on all unpaid balances of 1–1/2% per month."  Despite Otay's growing delinquency, Ramona did not assess service charges on any invoices issued during Otay's subcontract (with the exception of one service charge which Ramona credited back to Otay).  Ramona's first exercise of this contractual right took place on June 30, 2008—months after Otay's first default and weeks after its termination by Candelaria—when Ramona issued thirty-five "finance charge" invoices at once.

Ramona waived its right to collect service charges through its course of conduct. I would, therefore, vacate the award of $106,516.64 for service charges.