**WILLNER'S FUEL DISTRIBUTORS, INC., Appellant,**

v.

**Robert S. NOREEN and Thomas A. Rosson, Appellees.**

**No. S–5265.**

Supreme Court of Alaska.

Oct. 7, 1994.

---

400

Charles D. Silvey, A. Rene' Broker, and Zane Wilson, Staley, DeLisio, Cook & Sherry, Inc., Fairbanks, for appellant.

Christian N. Bataille, Fairbanks, for appellees.

Robert S. Noreen, pro se.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, and COMPTON, JJ.

## ORDER

IT IS ORDERED, *sua sponte:*

1. Opinion No. 4111, published on August 19, 1994, is WITHDRAWN.

2. Opinion No. 4133, in which the second paragraph of note 8 at page 7 in Opinion No. 4111 is deleted, is issued on this date in its place.

Entered by direction of the Court at Anchorage, Alaska on October 7, 1994.

EASTAUGH, J., not participating.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

RABINOWITZ, Justice.

## I. FACTS AND PROCEEDINGS

Thomas A. Rosson, Jr., formed a solely owned corporation, Rosson & Company, Inc. (Rosson, Inc.) in 1983.[1] Rosson, Inc. was involuntarily dissolved on November 27, 1985 by the State of Alaska.

In 1986, attorney Robert S. Noreen (Noreen) filed a voluntary bankruptcy petition for Rosson, Inc. and for Thomas Rosson individually in the United States Bankruptcy Court for the District of Alaska. Willner's Fuel Distributors, Inc. (Willner's) was listed as one of the twenty largest unsecured creditors of Rosson, Inc.[2] Willner's also was listed on the schedule of debts of Thomas Rosson individually. Both petitions were dismissed by orders dated April 9, 1988. No discharges were issued.

On April 8, 1988, Thomas Rosson and Rosson, Inc. sued the Fairbanks North Star Borough, R & M Engineering Consultants, and Glacier State Telephone Company (collectively referred to as "Borough") for breach of contract and negligence, and additionally sued the Fairbanks North Star Borough individually for business interference. The alleged breaches arose out of conduct following the August 20, 1984 award of a road contract, apparently to Rosson, Inc. Noreen was the attorney of record for both Thomas Rosson and Rosson, Inc. in this action.[3] Noreen claims that "at some point during this time frame" Thomas Rosson told him that Rosson, Inc. had been involuntarily dissolved in 1985.

On May 9, 1988, Willner's filed suit against Thomas Rosson and Rosson, Inc. for $20,-212.17. Noreen entered an appearance for Thomas Rosson individually, but did not enter an appearance for the corporation in the suit brought by Willner's. After filing its suit, Willner's learned that Rosson, Inc. had been involuntarily dissolved in 1985. On February 2, 1989, Willner's applied for default against Rosson, Inc.

At some time in March, the suit by Thomas Rosson and Rosson, Inc. against the Borough was settled for $100,000.00. Noreen explains that "Thomas Rosson settled the lawsuit against the Fairbanks North Star

---

1. Rosson, the individual, is referred to as "Thomas Rosson" to distinguish him from Rosson, Inc.

2. Willner's is an Alaska corporation that distributes fuels and petroleum products.

3. The April 8, 1988 complaint filed by "Thomas Rosson Jr, Rosson & Company, Inc." against the Borough identified the contract as being between the Borough and a single "plaintiff," identified as "Rosson."

Borough for $100,000.00 both in his individual capacity and as the past president or assignee of interests in the dissolved corporation Rosson & Company, Inc." [4] Noreen asserts that "[t]his settlement was concluded and settlement checks were received by attorney Noreen no later than March 26, 1989." The checks were made payable jointly to Thomas Rosson and Robert Noreen. Rosson, Inc. was not a payee.

The chronology of events on March 28, 1989 is disputed. On that date, Noreen and the attorney for Willner's signed and filed a stipulation that the lawsuit against Thomas Rosson individually would be dismissed without prejudice. According to Noreen, at sometime "in the morning" of March 28 Thomas Rosson accompanied Noreen to National Bank of Alaska (NBA), where Noreen deposited the settlement monies from the suit by Thomas Rosson and Rosson, Inc. against the Borough into his trust account. Noreen directed the NBA teller to transfer $80,000.00 from the trust account to Thomas Rosson, by cashier's check.[5] Noreen explains that he then wrote a check to himself from the settlement proceeds for his fee of $20,000.00, and deposited the check into his business account. At the time of the two transactions, Noreen asserts, he had no knowledge that Willner's was procuring a default judgment, writ of execution, or levy against Rosson, Inc.

Also on March 28, a default judgment in the amount of $25,257.44 was entered against Rosson, Inc. in the suit by Willner's against Thomas Rosson and Rosson, Inc., because Rosson, Inc. had "failed to plead in or otherwise defend this action." Noreen states that he was presented with a levy on his trust account to satisfy this default judgment "in the afternoon of March 28, 1989." According to Noreen, the settlement proceeds had already been distributed "to his client Thomas Rosson individually and as sole corporate representative of Rosson Inc., pursuant to

client demand" by this time. In a response to the levy, Noreen stated that he had no funds of Rosson, Inc. under his control.

On January 24, 1991, Willner's filed a complaint against Noreen and Thomas Rosson, alleging that Noreen had violated AS 09.40.040 in his response to the levy and had wrongfully disbursed the funds of an insolvent dissolved corporation. Willner's sought both the money award of Rosson, Inc.'s debt to Willner's and other damages. Willner's then filed a motion for summary judgment concerning Noreen's alleged violation of AS 09.40.040 based on his alleged false statements made in response to a court levy. Noreen filed a motion for judgment on the pleadings or, in the alternative, for summary judgment, contending *inter alia* that he owed Willner's no fiduciary duty. Noreen also moved for summary judgment regarding the AS 09.40.040 claim.

Thereafter, the superior court entered a memorandum decision and order denying the summary judgment motion by Willner's on the AS 09.40.040 claim and granting judgment to Noreen on this claim. Additionally, the superior court granted Noreen's summary judgment motion on the tort claims that Willner's raised. The superior court concluded that "[a]s a matter of law, Noreen did not violate any statutory or common law duty to Willner's."

The remaining claims of Willner's against Thomas Rosson were scheduled for a default judgment trial. Subsequently, the superior court issued an order stating that the judgment against Willner's on the claims against Noreen would not become effective until either the claims by Willner's against Thomas Rosson were resolved or until further order of the court.[6] Thereafter, the superior court entered findings of fact and conclusions of law, and a final default judgment, against Thomas Rosson in favor of Willner's. This appeal followed.

---

**4.** Noreen has refused to identify what portion of the proceeds he believed to belong to either Rosson, Inc. or Thomas Rosson, on the grounds of attorney-client privilege.

**5.** Thomas Rosson subsequently presented the check for payment at a Seattle bank on April 5.

**6.** This action apparently was taken in response to a request by Willner's that final judgment not be entered "on the basis that common issues involving both defendants ... remained to be resolved."

## II. DISCUSSION

### A. The AS 09.40.040 Summary Judgment Motion

Alaska Statute 09.40.040 states in relevant part:

All persons having in their possession personal property belonging to the defendant or owing a debt to the defendant at the time of service upon them of [a writ and notice of attachment pursuant to AS 09.40.010] shall deliver, transfer, or pay the property or debts to the peace officer, or be liable to the plaintiff for the amount of the property or debts until the attachment is discharged or a judgment recovered by plaintiff is satisfied.

In his argument before the superior court, Noreen contended that Willner's had served the levy too late, since it was served some time after the banking transaction in question had occurred. The superior court agreed, finding that "the levy by Willner's was served on Mr. Noreen later in the day [after the NBA transactions]."

■ In its motion for summary judgment on the AS 09.40.040 claim,[7] Willner's relied on the deposition testimony of process server David G. Chausse, who described service of the levy as occurring between 1:30 and 1:40 p.m. on March 28, 1989.[8] Willner's also relied on the testimony of Deborah Kimmell, the operations supervisor at the NBA office where transfer of the Borough litigation settlement proceeds to Thomas Rosson took place. Kimmell testified that no bank record could identify the precise time that the cashier's check to Thomas Rosson was prepared. The debit memo regarding the $80,000 charge against Noreen's account was dated March 29, 1989. Kimmell reasoned that this could only occur if the transaction took place on March 29, or at the end of the March 28 workday after 5:00 p.m., based upon the bank's standard practice of completing a debit memo at the time of the transaction.

■ We conclude that Noreen's assertion in his opposition to Willner's motion that the levy was served after he had returned from NBA, Chausse's statement that he served the levy at approximately 1:30 p.m., and Kimmell's statement implying that the transactions at NBA could have occurred after 5:00 p.m. on March 28, together raise genuine issues of material fact as to when Noreen authorized the issuance of the $80,000 cashier's check.[9] Accordingly, the superior court erred in its resolution of this question and its consequent grant of summary judgment to Noreen on the AS 09.40.040 claim.

### B. Noreen's Summary Judgment Motion as to the Breach of Fiduciary Duty Claims

■ Willner's contends that Noreen owed and breached a fiduciary duty to corporate

7. In reviewing a grant or denial of summary judgment, we must determine whether any genuine issues of material fact exist, and whether the moving party is entitled to judgment as a matter of law. *Drake v. Hosley*, 713 P.2d 1203, 1205 (Alaska 1986); *see also* Alaska R.Civ.P. 56(c). In determining if there are any genuine issues of material fact, the court must view the facts in the light most favorable to the non-moving party. *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992).

8. Noreen argues on appeal that Willner's cannot raise factual issues that were not before the superior court at the time of its ruling, and lists his own deposition and the deposition of David G. Chausse in the category of documents that "either did not exist or were not timely submitted to the trial judge in considering the motion." He urges us to consider on appeal only a small part of his deposition and none of the Chausse deposition.

Our review relies solely upon those excerpts from the deposition testimony that Willner's had attached to its motion documents before the superior court: the motion for summary judgment, the reply to Noreen's opposition to summary judgment, and the motion for reconsideration.

9. We note that there is documentary evidence that Noreen deposited a $20,000 check drawn on his trust account for his fee in the Rosson case in an account he held at the First National Bank of Anchorage during the morning of March 28, 1989. If one accepts Noreen's testimony that he wrote the $20,000 check at the same time he authorized the $80,000 cashier's check, this deposit is powerful support for Noreen's testimony that these transactions took place before the levy was served. However, if the March 29 debit memo casts doubt on the timing of the authorization for the cashier's check, it may also cause doubt on Noreen's testimony that he wrote the $20,000 check at the same time that he authorized the cashier's check.

creditors.[10] Willner's argues that once Rosson, Inc. was dissolved and became insolvent, Thomas Rosson, in his capacity as director, owed Willner's a fiduciary duty to preserve corporate assets, because those assets had become an informal trust fund for the benefit of Rosson, Inc.'s creditors. Willner's urges this court to fashion a similar fiduciary duty, running from Noreen in his capacity as corporate counsel to the creditors of the dissolved, insolvent corporation.

Thomas Rosson's liability to Willner's is not directly at issue in this appeal. Nonetheless, a determination whether Thomas Rosson owed a fiduciary duty to creditors bears on the existence of a similar duty on Noreen's part. Though it did not explain its reasons for holding Thomas Rosson liable under Alaska law to Willner's, the superior court properly could have proceeded under either of two theories.

■ First, under the "trust fund" theory, directors of an insolvent corporation may be personally liable to creditors for a breach of fiduciary duty resulting from an improper distribution of assets:

> An insolvent corporation is civilly dead in the sense that its property may be administered in equity as a trust fund for the benefit of creditors. The fact which creates the trust is the insolvency, and when that fact is established, the trust arises, and the legality of the acts thereafter performed will be decided by very different principles than in the case of solvency. . . .
>
> The courts . . . have held officers and directors of corporations to be at one time agents or mandataries, and at another

time, trustees, and have defined their liability accordingly; and they have been held as trustees where they took such advantage of their position of trust as public policy could not tolerate.

> . . . .
>
> . . . Clearly, it [is] not meant that directors of a corporation are trustees, in a strict and technical sense, in all of their relations with the corporation, its stockholders and creditors; but, as clearly, it [is] implied that they should be treated as such when they have unlawfully profited through breach of duty, and at the expense of the corporation.

*Bovay v. H.M. Byllesby & Co.*, 27 Del.Ch. 381, 38 A.2d 808, 813 (1944); *see also Rosebud Corp. v. Boggio*, 39 Colo.App. 84, 561 P.2d 367, 372 (1977); *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 787–88 (Del.Ch. 1992) (Chandler, V.C.) (noting the continued vitality of *Bovay*, and holding that directors' fiduciary duty to creditors arises with the fact of insolvency, not when the insolvent corporation institutes statutory proceedings such as a bankruptcy); *Whitfield v. Kern*, 122 N.J.Eq. 332, 192 A. 48, 54–55 (1937). *See generally* 3A William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 1175, 1180, 1182 (Stephen M. Flanagan & Charles R.P. Keating eds., perm. ed. rev. vol. 1986) (characterizing informal trust fund theory as majority rule).

■ Second, the superior court, viewing Rosson, Inc. as a dissolved corporation, could have held Thomas Rosson liable for a post-dissolution asset distribution in violation of former AS 10.05.216(c).[11] Though this provi-

---

10. In the alternative, Willner's argues extensively that under the theory of equitable subrogation, it and other creditors "stand in the shoes" of Rosson, Inc., and that Noreen therefore breached his fiduciary duty to the corporation itself. However, the record indicates that Willner's did not present this theory to the superior court. The closest that Willner's comes to arguing an equitable subrogation theory is a one-sentence remark, without citation to authority, in its opposition to summary judgment: "Here, Willner's a known creditor, stepped into the insolvent corporate 'shoes' of Rosson and Company, Inc. for purposes of asset entitlement." Willner's makes a similar one-sentence remark in its motion for reconsideration. Though the concept of equitable subrogation indeed has been described with

the metaphor that Willner's uses, *see Atlanta Int'l Ins. Co. v. Bell*, 438 Mich. 512, 475 N.W.2d 294, 298 (1991) ("Equitable subrogation has been described as a 'legal fiction' that permits one party to stand in the shoes of another."), Willner's cursory remarks in its motion documents do not demonstrate that Willner's offered such a theory to the superior court. Therefore, Willner's cannot raise this argument on appeal. *See Gates v. City of Tenakee Springs*, 822 P.2d 455, 460 (Alaska 1991).

11. Former AS 10.05.216(c) stated in part:

> The directors who vote for or assent to the distribution of assets of a corporation to its shareholders during the liquidation of the cor-

sion makes directors personally liable "to the *corporation* for the value of the assets distributed," former AS 10.05.216(c) (emphasis added), several courts construing similar statutory language apply the trust fund theory to allow creditors as a class to sue. *See Ficor, Inc. v. McHugh,* 639 P.2d 385, 393 (Colo.1982) (allowing statutory remedy to all creditors as a group); *cf. Kidde Indus., Inc. v. Weaver Corp.,* 593 A.2d 563, 566 (Del.Ch. 1991) (Chandler, V.C.) (applying trust fund theory to allow creditors an action under a statute subjecting nonresident directors to personal jurisdiction based upon the directors' fiduciary duty to creditors). *Contra Nachazel v. Mira Corp., Mfg.,* 466 N.W.2d 248, 255–56 (Iowa 1991) (applying plain meaning analysis to statutory language, and holding that creditors had no cause of action against corporate officers and directors). We agree with the courts in *Ficor* and *Weaver,* and therefore hold that Thomas Rosson, in his capacity as director of Rosson, Inc., owed Willner's and the other creditors of the corporation a fiduciary duty to preserve its assets, in particular the proceeds from the Borough settlement, for their benefit.[12]

■ As for Noreen's liability, we note that Noreen represented two clients: Thomas Rosson, a natural person, and Rosson, Inc., a dissolved corporation. The interests of these two clients with respect to the net proceeds of their claim, $80,000, were not identical. The corporation's interest was in maximizing its share of the proceeds and in disbursing the proceeds to its creditors in accordance with the priorities established by law. Thomas Rosson's interest was in maximizing his individual claim to the proceeds. A lawyer who represents clients with conflicting interests is in a sensitive position and may be liable for breach of the lawyer's fiduciary responsibilities to either client. Just as creditors may sue directors on behalf of a dissolved corporation, creditors may maintain similar actions against the attorney of the dissolved corporation for breach of the attorney's fiduciary obligations. *See Robertson v. White,* 633 F.Supp. 954, 969–71 (W.D.Ark.1986) (holding that, in a consolidated action by both an agricultural co-op's bankruptcy trustee and a class consisting of the co-op's members, shareholders, and creditors, the plaintiffs could maintain a negligence action against the co-op's counsel—for harm to the co-op, not to the class—because the co-op "enjoys privity of contract with its professional advisors"); *cf. Ohman v. Kahn,* 685 F.Supp. 1302, 1311 (S.D.N.Y.1988) (allowing investor in corporation an action against corporate counsel because action was brought derivatively on corporation's behalf); *Karris v. Water Tower Trust & Sav. Bank,* 72 Ill.App.3d 339, 27 Ill.Dec. 951, 962, 389 N.E.2d 1359, 1370 (1979) (holding that had attorney breached fiduciary duty to corporation, a shareholder could sue the attorney through a derivative action); *Rowen v. Le Mars Mut. Ins. Co.,* 282 N.W.2d 639, 654 (Iowa 1979) (allowing policyholders in a derivative action against the insurer a claim against the insurer's attorney, on the grounds that "all who assist or cooperate in the breach of fiduciary duties—whether di-

poration without the payment and discharge of, or making adequate provision for, all known debts, obligations, and liabilities of the corporation are jointly and severally liable *to the corporation* for the *value of the assets distributed,* to the extent that the debts, obligations and liabilities of the corporation are not paid and discharged.
(Emphasis added). This provision was reenacted, in slightly modified form, as part of the new Alaska Corporations Code. *See* AS 10.06.480(a)(2).

12. Former AS 10.05.594(a) provided that the dissolution of a corporation did not "take away or impair a remedy available to or against the cor-

poration, its directors, officers, or shareholders, for a right or claim existing, or a liability incurred, prior to dissolution if an action or other proceeding is commenced within two years after the date of dissolution." Though the parties disputed the applicability of this limitations period in their summary judgment motions, this issue is not before us on appeal.

Furthermore, the formal dissolution of Rosson, Inc. occurred in 1985. The corporation filed its suit against the Borough in 1988, well after the limitations period had run, and the allegedly improper transfer of the Borough settlement proceeds to Thomas Rosson occurred in 1989.

rectors or not—are liable for the resulting damage"); *Robertson v. Gaston Snow & Ely Bartlett*, 404 Mass. 515, 536 N.E.2d 344, 350 n. 5 (holding that any shareholder's claim against corporate counsel for breach of fiduciary duty must be through a derivative action), *cert. denied*, 493 U.S. 894, 110 S.Ct. 242, 107 L.Ed.2d 192 (1989). This case can be viewed as such an action. So viewed, there are questions of fact concerning whether Noreen breached his fiduciary duty to Rosson, Inc.

The corporate assets at issue here were placed in Noreen's attorney's trust account, and thus were in his custody and control. Requiring an insolvent or dissolved corporation's attorney to protect assets in his or her custody from a director's improper distribution would not impose an unwarranted burden on the legal profession. In fact, an attorney often has an ethical duty to protect third-party claims to funds in his or her custody from a client's wrongful interference. *See* Alaska Rules of Professional Conduct 1.15 cmt.

By way of summation, we hold that if an attorney represents both a dissolved or insolvent corporation and a director or officer of that firm, and if the attorney controls corporate assets, then the attorney must protect the financial rights of creditors to these assets, where he or she knows or should know that the director or officer intends to interfere with creditors' claims through an improper distribution of these assets. To do otherwise would sanction a class of wrongs without a remedy. Accordingly, as a matter of law, we hold that Noreen was not entitled to summary judgment.[13]

## III. CONCLUSION

The superior court erred in granting summary judgment to Noreen on Willner's AS 09.40.040 motion, as there were genuine questions of material fact as to the relative timing of the service of the levy and the NBA transactions, and the possession of the funds at the time of the levy. The superior court also erred in holding that Noreen owed no

---

13. Though it was one of many unsecured creditors to Rosson, Inc., Willner's is suing Noreen on behalf of itself alone, and is suing for the full amount of the debt owed it, plus interest. Had the proceeds from the Borough settlement remained with the corporation, they would have been allocated among all the creditors, with senior and secured creditors having priority over junior and unsecured creditors such as Willner's. Many jurisdictions that hold directors and officers of an insolvent or dissolved corporation liable to creditors for an improper asset distribution nonetheless disallow actions by single creditors or require single creditors to sue on behalf of all creditors. *See, e.g., In re MortgageAmerica Corp.*, 714 F.2d 1266, 1271 (5th Cir.1983) (construing Texas law to require money collected by a single creditor to first be "distributed pro-rata to all creditors"); *Ficor, Inc. v. McHugh*, 639 P.2d 385, 393 (Colo.1982) (allowing all creditors as a group a cause of action for directors' improper post-dissolution distribution); *Portage Insulated Pipe Co. v. Costanzo*, 114 N.J.Super. 164, 275 A.2d 452, 453 (App.Div.1971) (per curiam) (holding that where directors of an insolvent corporation give improper priority to repaying one creditor over another, a single creditor either must bring the action through a receiver or must raise it in equity on behalf of all creditors);

*Sutton v. Reagan & Gee*, 405 S.W.2d 828, 834 (Tex.App.1966) (allowing action against director of insolvent corporation either through a suit by the receiver or trustee in bankruptcy or through a creditor's bill brought on all creditors' behalf).

Had Noreen not disbursed the proceeds from the Borough settlement to Rosson, instead retaining the funds in his attorney's trust account, he could have been vulnerable to claims upon the funds not only from Willner's but also from Rosson, Inc.'s other creditors. In such a situation, Noreen, as stakeholder for the proceeds, could deposit them in the superior court registry and file a claim for interpleader, requiring the joinder of all of Rosson, Inc.'s creditors, in order to avoid multiple liability and vexatious litigation. *See, e.g., Johnston v. All State Roofing & Paving Co., Inc.*, 557 P.2d 770, 773 (Alaska 1976); Alaska R.Civ.P. 22.

If upon remand it is determined that Noreen is liable for wrongfully disbursing the proceeds for the Borough settlement to Thomas Rosson, then any recovery against Noreen should be deposited into the superior court registry, and Willner's should notify all other creditors of the availability of these funds for allocation. Allowing Willner's to recover on its own behalf is not permissible, because doing so would prejudice other creditors.

duty to a creditor of the dissolved, insolvent corporation. We hold that such a duty may exist, that genuine issues of fact exist as to Noreen's violation of this duty, and accordingly that Noreen was not entitled to summary judgment as a matter of law.

REVERSED and REMANDED to the superior court for further proceedings.

BURKE, J., not participating.*

---

* Justice Burke participated in oral argument but retired from the court before the opinion was rendered.