William O. WHITESIDES, Appellant,

v.

U-HAUL COMPANY OF
ALASKA, Appellee.

No. S–9204.

Supreme Court of Alaska.

Jan. 19, 2001.

John E. Havelock, Law Offices of John E. Havelock, Anchorage, for Appellant.

Laura L. Farley, Le Gros, Buchanan & Paul, Anchorage, for Appellee.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

William Whitesides sued U–Haul Company of Alaska for overtime wages, claiming that the company improperly classified his field manager job as administrative, which the Alaska Wage and Hour Act exempts from overtime pay. The superior court denied summary judgment to Whitesides and submitted his claim to a jury, which ruled for U–Haul. We reverse. To qualify as an exempt administrative employee, a worker must be paid on a salary basis and work only under general supervision. Because undisputed record evidence established that U–Haul

failed to pay Whitesides on a salary basis and required him to work under direct supervision, Whitesides was entitled to summary judgment.

## II.  *FACTS AND PROCEEDINGS*

William Whitesides began working for the U–Haul Company of Alaska (U–Haul) in February 1995, when he was hired as a "manager trainee" in U–Haul's Anchorage office.  As a manager trainee, Whitesides received hourly wages and overtime pay. After a few months, Whitesides was promoted to general/center manager of U–Haul's Anchorage retail center.  As a general/center manager, Whitesides was a salaried employee and did not receive overtime pay.  He oversaw the daily operations of the retail center and supervised all of its employees.

Whitesides was given the position of Area Field Manager (AFM) on September 25, 1995.  He reported directly to the U–Haul Company of Alaska's president, John Norris. U–Haul requires all AFM's to complete a training program, take a certification exam, and learn U–Haul's policies and procedures. After working for a few months in his new position, Whitesides spent two weeks in Seattle completing this AFM training and certification process.

As an AFM, Whitesides was the point of contact between the U–Haul Company of Alaska, which is essentially a marketing company, and individual U–Haul dealerships, which are privately-owned businesses.

Whitesides was responsible for servicing approximately twenty-five dealerships along the road systems of south central and interior Alaska, from Homer to Anchorage and Fairbanks to Tok. One of Whitesides's primary duties was to visit these dealerships. U–Haul expected him to make sixteen dealer visits per month, which required him to spend approximately four days per week visiting dealerships.  Whitesides drove a large U–Haul truck outfitted to service U–Haul equipment in the field.  Whitesides described these visits during his deposition:

> [A]n average dealer visit, I guess, would consist of going into the dealership and looking ... and seeing ... what their U–Haul operation looks like from the street, the same as a customer would.  Then going in and making suggestions to help them improve their business.
>
> But I would go in and do equipment checks and inspections, certifications, safety checks.  I would do minor equipment maintenance.
>
> Then there was a dealer service report, which consisted of looking at the dealer's paperwork, auditing their business and ensuring that they fully understood and complied with the U–Haul policies and procedures.

In February 1996 Whitesides lost control of his truck while driving back from Fairbanks.  Soon after the accident, on February 15, Norris handed Whitesides a memorandum reassigning him for an unspecified time to U–Haul's Anchorage office, where he was expected to work six days per week under the direction of Julie Miller:

> Effective immediately report to the Marketing Company office daily.  Your hours are to be 8:00 am to 6:00 pm Monday through Friday and 8:00 am to 4:00 pm Saturday.  I expect you to work directly with Julie Miller, who has the priority list. You will remain at this status until further notice.

The memorandum also indefinitely restricted Whitesides from further travel unless expressly authorized by Norris or Miller:

> The AFM rig is to be parked until the shop can get necessary repairs completed to return the rig to like new condition. Dustin Curtis has been notified of this matter.  All travel will be authorized through myself or Julie Miller, to be done in your own personal vehicle and mileage will be reimbursed.  This will remain in effect until further notice.

The day after receiving this memorandum, Whitesides reported to work at 8:15 in the morning, fifteen minutes late.  Norris immediately suspended him without pay for three days.  When Whitesides returned to work after his suspension, he reported to Miller and essentially worked as her assistant for several weeks.  He eventually returned to the field.  Norris continued to be dissatisfied

with Whitesides's performance, finally firing him on July 15, 1996.

Whitesides sued U–Haul in August 1997, seeking unpaid overtime wages and liquidated damages. In December 1997 U–Haul's attorney mailed Whitesides's attorney a letter from Norris to Whitesides explaining that, after reviewing its policies, U–Haul had decided that Whitesides's pay "was inadvertently reduced" when he was suspended. Although the letter insisted that Whitesides's three-day suspension was justified, it acknowledged that the suspension "should have been with pay instead of without pay." Accordingly, Norris enclosed a check for the withheld wages, plus interest from the date of the suspension to the date of the letter.

Both parties thereafter moved for summary judgment: U–Haul argued that Whitesides was an administrative employee and was therefore exempt from overtime compensation; Whitesides contended that his job duties did not qualify as administrative employment. The superior court granted partial summary judgment to U–Haul, finding that Whitesides was paid on a salary basis—a requirement of administrative employment. As to other disputed issues, the court concluded that a trial was necessary to determine "whether the work being done by [Whitesides] qualifies as administrative."

At trial, Whitesides unsuccessfully moved for a directed verdict. The jury returned a verdict for U–Haul, finding that Whitesides was an exempt administrative employee. After the court denied his motion for judgment notwithstanding the verdict, Whitesides filed this appeal.

## III. *DISCUSSION*

### A. *Standard of Review*

■ Whitesides contends that the superior court erred in denying his motion for summary judgment. A party moving for summary judgment will prevail if there is no genuine issue of material fact and if the

movant is entitled to summary judgment as a matter of law.[1] In reviewing a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party.[2]

### B. *Did the Superior Court Err in Refusing to Grant Whitesides's Motion for Summary Judgment?*

Under the Alaska Wage and Hour Act (AWHA), an employee is entitled to overtime pay for hours worked in excess of forty hours per week or eight hours per day.[3] Certain kinds of employees, including those serving in bona fide executive, administrative, and professional capacities, are exempt from the overtime provisions of the AWHA.[4] Here, U–Haul relies on the administrative employment exemption; Whitesides maintains that the evidence precludes a finding of administrative employment.

The Alaska Administrative Code defines the administrative employment exemption to require proof of six factors, specifying that an "administrative employee" is a worker

(A) whose primary duty consists of work directly related to management policies or supervising the general business operations of the employer;

(B) who customarily and regularly exercises discretion and independent judgment;

(C) who performs work only under general supervision;

(D) who is paid on a salary or fee basis;

(E) who regularly and directly assists a proprietor or an exempt executive employee of the employer; and

(F) who performs work along specialized or technical lines requiring special training, experience or knowledge and does not devote more than 20 percent, or in the case of an employee of a retail or service establishment who earns at least two and one half times the state minimum wage per hour for the first 40 hours of employment

1. *See Andrews v. Wade & De Young, Inc.,* 950 P.2d 574, 575 (Alaska 1997).

2. *See Mathis v. Sauser,* 942 P.2d 1117, 1120 (Alaska 1997) (citing *Willner's Fuel Distribs., Inc. v. Noreen,* 882 P.2d 399, 403 n. 7 (Alaska 1994)).

3. AS 23.10.060(b).

4. AS 23.10.055(9).

each week and who does not devote more than 40 percent of the employee's weekly hours to activities that are not described in this paragraph[.] [5]

Like the federal Fair Labor Standards Act (FLSA),[6] the terms of the AWHA, a remedial statute designed to effectuate the legislature's goal of providing broad employment protection, are to be liberally construed.[7] Accordingly, exemptions to the AWHA, including the bona fide administrative exemption, are to be narrowly construed and limited to those "plainly and unmistakably within their terms and spirit." [8]

The crux of Whitesides's argument at summary judgment was that he was not "paid on a salary basis or fee basis," and therefore did not meet the definition of an administrative employee. The AWHA does not define "salary basis," but the statute provides that terms not defined in the AWHA or in regulations adopted under it shall be defined as they are defined in the FLSA or the regulations adopted under it.[9] The term "salary basis" is defined by the Department of Labor's regulations, which provide, in relevant part:

> An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.[10]

Since U–Haul docked his wages when it suspended him, Whitesides contends that his wages were "subject to reduction because of variations in the quality or quantity of the work performed," and so fail to qualify as "salary" under the "salary basis" test.

There is no real dispute that U–Haul improperly deducted wages from Whitesides. The regulation, however, provides a "window of correction" under which an employer who has improperly deducted pay from a salaried employee may reimburse the deducted wages and avoid losing the overtime exemption:

> The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.[11]

In opposing Whitesides's motion for summary judgment, U–Haul argued that it was entitled to judgment on the issue of whether Whitesides was a salaried employee, because it had reimbursed him within the "window of correction." The superior court agreed, writing:

> The court is satisfied that the defendant has properly utilized the "window of correction," if it applies, and that, with that correction, the disciplinary treatment of

---

**5.** 8 Alaska Administrative Code (AAC) 15.910(a)(1).

**6.** 29 U.S.C. §§ 201–19.

**7.** *See Powell v. United States Cartridge Co.,* 339 U.S. 497, 516, 70 S.Ct. 755, 94 L.Ed. 1017 (1950) (recognizing that "[b]readth of coverage" is "vital to the [FLSA's] mission").

**8.** *Cf. Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960).

**9.** AS 23.10.145.

**10.** 29 C.F.R. § 541.118(a).

**11.** 29 C.F.R. § 541.118(a)(6).

the plaintiff does not disqualify him from being treated as an administrative employee. This, however, does not resolve the material factual issues, about which there are disputes, whether the work being done by the plaintiff qualifies as administrative.

The court's written order was somewhat ambiguous as to whether it granted summary judgment to U–Haul on the "salary basis" prong of the administrative employment test or simply decided that a triable issue of fact existed as to this prong, thereby precluding Whitesides's competing claim for summary judgment. This ambiguity prompted Whitesides's attorney to ask for clarification:

[T]here's a very technical definition of salaried employee in the law, and if you suspend an employee except for safety reasons or out of inadvertence, that then the employee, even though salaried, is not salaried.... I don't know whether this issue is still in the case or not.... I don't know whether you said they used the window [of correction] and fulfilled the full requirement of the statute, or whether ... there was a question of fact involved.... I don't know whether [there] are jury issues at this point, or whether Your Honor has ruled that, as a matter of law, that that offering of a check a year later was full compliance. So that issue is sort of sitting out there.

U–Haul's attorney responded, stating: "I understand your order, Your Honor, I understand it to say salary is no longer at issue. He was paid a salary, and that element has been established." The parties continued to discuss the question, with Whitesides insisting that there remained a question of fact and U–Haul contending that the salary issue had been decided as a matter of law. The superior court resolved the ambiguity in U–Haul's favor, declaring, as a matter of law, that Whitesides had been paid on a salary basis:

I understand the parties and the court's question to be whether the court should leave open the question of whether Mr. Whitesides was a salaried employee. The only—the potential facts related to that being that he was treated as salaried except for the disciplinary conduct—disci-

plinary action that was for something other than a safety rule, and ... for which there was then a later correction. And my earlier ruling was that this was a correction within the window of—it was a window of correction, or whatever it's called, and that there was—the correction was made. And I do affirm or reaffirm the statement that there's summary judgment as to that, that he is a—that the court finds he was salaried, he was treated as salaried.... But that is not to say that I'm excluding the evidence and the proof that the kind of work that he did doesn't qualify him for the exemption from overtime. So that's what I understand the trial to be about.

In keeping with this ruling, Whitesides presented little evidence at trial regarding his disciplinary suspension, and did not seek to prove that U–Haul failed to pay him on a "salary basis." In closing argument to the jury, he conceded that "under the law, there are six tests [defining administrative employee]. You could ignore one of them, which has—which is whether he got a salary. He did get a salary."

On appeal, Whitesides contends that U–Haul did not pay him on a salary basis, and he insists the company's failure to meet this prong of the administrative employment test entitled him to summary judgment on his overtime compensation claim. Upon review of the record at summary judgment and the applicable law, we conclude that Whitesides's arguments have merit.

U–Haul convinced the trial court that it had properly used the "window of correction" in refunding Whitesides's wages and that its improper disciplinary deduction therefore did not affect Whitesides's exempt status. But U–Haul's attempt to refund the wages occurred nearly two years after it had improperly docked Whitesides's pay, more than sixteen months after it had terminated his employment, and almost four months after he had filed his action for overtime pay. Opening a window of correction in these circumstances would create an unwarranted loophole:

An employer would be able to treat otherwise exempt employees as non-exempt by subjecting their pay to reduction, and at

the same time refuse to pay these employees overtime. But if the employer is sued, it can still avoid the payment of overtime simply by reimbursing the employees for the deductions and promising to comply in the future....

An employer could thus retroactively take advantage of the statutory exemption from paying overtime compensation irrespective of how egregiously it flouted the 'salary basis' test.[12]

■ To prevent this kind of abuse, we hold that the window of correction ordinarily must be deemed to close when litigation commences. By the time U–Haul offered to "remedy" its "inadvertent error," the opportunity for correction had already passed. And since reducing pay "because of variations in the quality or quantity of the work performed"[13] is fundamentally inconsistent with the concept of salaried employment, it follows that U–Haul failed to prove that it paid Whitesides on a salary basis, as the Alaska Administrative Code requires, in order to establish exempt administrative employment.[14]

■ But even if we held the window of correction open after litigation commenced, the undisputed facts of the present case would compel us to resolve the issue of salaried employment in Whitesides's favor.

Norris's memo of February 15, 1996, reassigned Whitesides to U–Haul's Anchorage office, telling him that he would be required to work six-day, fifty-eight-hour workweeks: "Your hours are to be 8:00 am to 6:00 pm Monday through Friday and 8:00 am to 4:00 pm Saturday." When Whitesides arrived fifteen minutes late the next day, Norris immediately disciplined him for being late, suspending him without pay for three days.

Although U–Haul belatedly attempted to restore Whitesides's pay more than a year and a half later, after Whitesides's filed his overtime compensation claim, the company never acknowledged that the disciplinary suspension was improper; indeed, Norris wrote Whitesides that "your suspension was justified."

By subjecting Whitesides to a rigid hourly schedule and strictly enforcing that schedule with severe disciplinary sanctions, U–Haul unmistakably treated him like an hourly worker, rather than a salaried employee. In distinguishing between salaried and hourly employment, the Third Circuit Court of Appeals has observed:

Salary is a mark of executive status because the salaried employee must decide for himself the number of hours to devote to a particular task. In other words, the salaried employee decides for himself how much a particular task is worth, measured in the number of hours he devotes to it. With regards to hourly employees, it is the employer who decides the worth of a particular task, when he determines the amount to pay the employee performing it. Paying an employee by the hour affords that employee little of the latitude the salary requirement recognizes.[15]

More recently, the Ninth Circuit similarly commented: "It is precisely because [exempt employees] are thought not to punch a time clock that the salary test ... requires that an employee's predetermined pay not be 'subject to reduction because of variations in the ... quantity of work performed.'"[16] And more recently still, the Washington Supreme Court held that an employer's rigid work-hour quotas, combined with a policy of docking employees for working less than the re-

12. *Belcher v. Shoney's, Inc.*, 30 F.Supp.2d 1010, 1024 (M.D.Tenn.1998) (quoting amicus curiae brief of United States Secretary of Labor).

13. *See* 29 C.F.R. § 541.118(a).

14. 8 AAC 15.910(a)(1)(D).

15. *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 184 (3d Cir.1988) (footnote omitted); *see also Thomas v. County of Fairfax*, 758 F.Supp. 353, 360–61 (E.D.Va.1991).

16. *Abshire v. County of Kern*, 908 F.2d 483, 486 (9th Cir.1990), *superseded by regulation as stated in Yourman v. Dinkins*, 826 F.Supp. 736, 744 (S.D.N.Y.1993) (interpreting 29 C.F.R. § 541.5d to overrule the express holding of *Abshire* due to its special provisions for employees of public agencies, but noting that the statute did not overrule the *Abshire* court's subject-to-reduction analysis).

quired hours, violated the Washington Minimum Wage Act's "salary basis" test.[17]

Even without considering the issue of suspended pay, then, we conclude that U–Haul's treatment of Whitesides was inconsistent with the notion of salaried employment.

Moreover, these circumstances independently establish that U–Haul violated a separate prerequisite of administrative employment: the Administrative Code's requirement that an administrative employee must be a worker "who performs work only under general supervision."[18] U–Haul's insistence that Whitesides follow a rigid work schedule, its immediate use of sanctions to punish a minor violation of that schedule, its direction that Whitesides work with Julie Miller, its order restricting him from travel except when expressly authorized, and its imposition of these measures on an indefinite basis[19] all belie the conclusion that U–Haul expected Whitesides to work "only under general supervision."

In summary, then, undisputed evidence in the record when the superior court ruled on summary judgment established that U Haul's treatment of Whitesides violated two requirements of administrative employment, as defined in 8 AAC 15.910(a)(1): that an administrative employee must work only under general supervision and that the employee must be paid on a salary basis.[20] Since Whitesides's work can be labeled "administrative" only if it met all six of the established requirements,[21] he was not an admin-

istrative employee, and thus was not exempt from the payment of overtime wages.

## IV. CONCLUSION

We therefore conclude that it was error to deny Whitesides's motion for summary judgment on his claim for overtime compensation. Accordingly, we VACATE the judgment and REMAND for further proceedings consistent with this opinion.[22]

---

**17.** *Drinkwitz v. Alliant Techsystems, Inc.,* 140 Wash.2d 291, 996 P.2d 582, 588 (2000).

**18.** 8 AAC 15.910(a)(1)(C).

**19.** Norris's memorandum directed: "You will remain at this status until further notice." We note that in its summary judgment pleadings, U–Haul did not attempt to argue that Whitesides's reassignment to Anchorage amounted to a temporary shift from administrative to hourly work. Indeed, at trial, U–Haul insisted that the reassignment did not change the character of his work. At trial, U–Haul's attorney asked Norris: "Was it your intent to change his job when you gave him that memo from a exempt position to an hourly position?" Norris responded "No, not at all."

**20.** 8 AAC 15.910(a)(1)(C) & (D).

**21.** *See D'Camera v. District of Columbia,* 693 F.Supp. 1208, 1213 (D.D.C.1988) (stating that "[i]n order to claim exempt status under FLSA, an employer must meet every aspect of the definition for an exempt employee") (citing *Hodgson v. Barge, Waggoner & Sumner, Inc.,* 377 F.Supp. 842, 844 (M.D.Tenn.1972)).

**22.** Our conclusion that Whitesides was entitled to summary judgment on his claim for overtime compensation makes it unnecessary to consider his other claims of error, which are either moot or premature in light of our ruling.