*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DAT LUONG, d/b/a LVDH CONSTRUCTION, | ) ) ) | Supreme Court No. S-17593 |
| Petitioner, | ) ) | Superior Court No. 3AN-18-06916 CI |
| v. | ) ) | O P I N I O N |
| WESTERN SURETY COMPANY, | ) ) | No. 7519 – April 23, 2021 |
| Respondent. | ) ) ) | |

Petition for Hearing from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Michael L. Wolverton, Judge, on appeal from the District Court of the State of Alaska, Anchorage, Douglas Kossler, Judge.

Appearances: Dat Luong, pro se, Fresno, California, Petitioner. Traeger Machetanz, Anne Marie Tavella, and Chad Darcy, Davis Wright Tremaine LLP, Anchorage, for Respondent.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

BOLGER, Chief Justice.

## I.   INTRODUCTION

The employee of a subcontractor on a state public works project sued the prime contractor's surety bond for unpaid labor under Alaska's Little Miller Act. The

trial court ruled the employee failed to give notice to the contractor within the statutorily required 90 days of his last date of labor on the project. The trial court entered a directed verdict against the employee. The employee appealed to the superior court, which denied the appeal, and then petitioned this court for hearing.

We granted the petition to decide two issues of first impression: (1) how to define "labor" and (2) whether "notice" is effective on the date of mailing or the date of receipt. Under the Little Miller Act, we define "labor" as work that is "necessary to and forwards" the project secured by the payment bond, and hold the effective date of "notice" to be the date notice is sent via registered mail. We reverse the superior court's denial of Luong's appeal, vacate the judgment against him, and remand for further proceedings.

## II.    FACTS AND PROCEDURAL HISTORY

### A.    Facts

Earth Stone, Inc. hired Dat Luong in December 2014 to serve as vice president and estimator. Earth Stone provided finish-concrete work for the prime contractor, Pinnacle Construction, Inc., on a municipal library remodeling project. Western Surety Company provided the surety bond for Pinnacle on the project.[1]

In early 2015 Luong performed a variety of tasks for Earth Stone on the project, but by April he had stopped receiving consistent payment for his work.[2] Many

---

[1]    AS 36.25.010(a)(2) requires that, for "contract[s] exceeding $100,000 for the construction, alteration, or repair of a public building or public work," the contractor must supply "a payment bond with a corporate surety qualified to do business in the state."

[2]    A July 2015 letter from Earth Stone's president and owner, Peggy Mitchell, acknowledged that Earth Stone owed Luong $34,450 and indicated payment would be provided after addressing some "financial difficulties." Luong alleges he is actually

(continued...)

of Luong's duties were supervisory, but his work on the project included physical tasks like mixing and pouring concrete. Luong helped with the last concrete pour at the project on October 9, 2015. This is the last date that both parties agree Luong provided labor on the project.

On January 6, 2016, 89 days after the last concrete pour, Luong requested $8,379.90 in back wages from Pinnacle in a letter sent by registered and certified mail. As confirmed by a signed receipt, Pinnacle received this letter on January 11, 94 days after the final concrete pour. Western Surety asserts that Luong's testimony is the only evidence of when the letter was sent. But the letter is dated January 6, and Western Surety presented no evidence the letter was mailed on a different date.

On July 26, Luong sent Pinnacle another letter reminding them he had yet to be paid for his work on the project. This letter notified Pinnacle that Luong had received a judgment in California against Earth Stone for work performed, and this judgment had now been "effectuated and recorded in Alaska."

### B.    Procedural History

Luong filed suit in small claims court, requesting $8,945.21 for unpaid labor from Pinnacle's payment bond with Western Surety under the Little Miller Act.[3] The district court granted Western Surety's request for formal procedures.

---

**2**    (...continued)
owed $58,000 for his unpaid work with Earth Stone on multiple projects, but decided to pursue his case for less than $9,000 in small claims court to avoid legal expenses after years of fighting for payment.

**3**    The Little Miller Act requires contractors for public works to furnish payment bonds or sureties. AS 36.25.010. "A person who furnishes labor or material in the prosecution of" such a public work but is not fully paid may sue for payment in full on this bond. AS 36.25.020(a).

Western Surety moved for summary judgment, arguing that no genuine issue of material fact existed as to whether Luong's supervisory work qualified as "labor" under the Little Miller Act. The district court judge who initially oversaw the case disagreed, observing a general consensus among courts in various jurisdictions interpreting the term to at least include work performed at the job site.

After a transfer to a new district court judge, a bench trial was held over three days in March and April of 2018. Three witnesses testified to the range of tasks Luong performed on the project, including supervisory tasks on and off the project site and physical labor involved with laying concrete at the project site. Luong testified that he undertook these physical tasks — laying concrete, carrying materials, and cleaning up the site — when chronic non-payment by Earth Stone led to a shortage of workers. Earth Stone foreman Willie House specifically testified he and Luong were the only employees left at the job site by October 9, 2015, the date of the last concrete pour.

At the close of Luong's case, Western Surety moved for a directed verdict, arguing Luong had not provided notice until January 11, 2016, and therefore needed to prove he provided "labor" on or after October 13, 2015 in order to meet the 90-day notice deadline for him to sue under the Little Miller Act.[4] Western Surety emphasized that it was the last day Luong provided "labor" on the project that was relevant, not the last day he worked for Earth Stone in general. Luong responded that the January 6 letter

---

[4] *See* AS 36.25.020(b) (for person whose contractual relationships were with subcontractor, making right to sue payment bond dependent on "giving written notice to the contractor within 90 days from the last date on which the person performed labor or furnished material").

provided timely notice of his claim. Luong also asserted he performed labor even after the October 9 concrete pour.[5]

The trial judge interpreted "labor" in the Little Miller Act to include supervisory tasks only if they were performed on the job site. The judge concluded Luong failed to establish he performed labor at the job site within 90 days of the notice he provided to Pinnacle. The court noted that two of Luong's exhibits indicate his last day of work for Earth Stone at the project was October 9, 2015, more than 90 days before January 11, 2016. The court assumed the operative date of notice was January 11, 2016, the date Pinnacle received the letter from Luong's attorney. The trial judge granted Western Surety's motion for directed verdict and awarded attorneys' fees to Western Surety.

Luong appealed to the superior court, which denied his appeal. The superior court did not address Luong's notice argument. Rather, it too assumed Luong "provided notice on January 11, 2016" and thus "must show that he performed labor on or after October 13, 2015." The superior court explained that neither the testimony nor exhibits properly admitted into evidence at trial constituted "evidence that [Luong] provided labor during the notice period."[6] The superior court did not attempt to define the term "labor" under the Little Miller Act, nor did it attempt to specify when it

---

[5]	This claim rests on the foreman's testimony that after concrete is poured, at least two days must pass before the forms can be stripped and the site cleaned. The foreman left the state after the last concrete pour, implying that Luong, as the last remaining worker, must have later returned to the job site to strip the forms and do site clean up. Luong also points to a journal entry discussing tasks he performed on the project in late October, but this was not admitted into evidence.

[6]	The superior court noted the evidence did not provide "a specific timeframe as to when the appellant performed labor," adding that Luong's diary entries were not admitted as exhibits because Luong failed to lay appropriate foundation for them.

considered the last day of "labor" to have been. Luong moved for reconsideration, which the superior court denied.

Luong then filed a petition for hearing with this court. We granted Luong's petition on two issues of first impression regarding Alaska's Little Miller Act: (1) what constitutes "labor" under AS 36.25.020(b), and (2) whether the effective date of "notice" under that section is the date of mailing or the date of receipt.

## III.   STANDARD OF REVIEW

"Determinations of which legal authorities apply in a case and interpretations of what those legal authorities mean are questions of law subject to de novo review."[7] "When applying the de novo standard of review, we apply our 'independent judgment . . . adopting the rule of law most persuasive in light of precedent, reason, and policy.' "[8]

## IV.   DISCUSSION

Alaska's Little Miller Act requires prime contractors on public works projects to maintain a payment bond.[9] If "a person having direct contractual relationships with a subcontractor" is not paid in full, that person "has a right of action on the payment bond."[10] That right is conditioned on a requirement to "giv[e] written

---

[7]     *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 122 (Alaska 2014) (footnotes omitted).

[8]     *Id.* (quoting *Russell ex rel. J.N. v. Virg-In*, 258 P.3d 795, 802 (Alaska 2011)).

[9]     AS 36.25.010.

[10]    AS 36.25.020.

notice to the contractor within 90 days from the last date on which the person performed labor or furnished material for which the claim is made."[11]

The statutory purpose of the Little Miller Act "is to protect persons who furnish labor or material for a state public works project from the risks of nonpayment."[12] In turn, the state is "assured that material and labor will be readily furnished for its projects," as people "who furnish labor and materials for the state's projects do so in reliance on the existence of a valid payment bond."[13]

Alaska's Little Miller Act is modeled after the federal Miller Act. When resolving disputes brought under the Little Miller Act, we "give more weight to principles derived from federal case law interpreting the Miller Act than to general common law principles governing debtor-creditor relations."[14] We have previously said that the Little Miller Act, "like the federal Miller Act, is remedial in nature and is to be liberally construed to effectuate its purpose."[15]

---

[11] *Id.*

[12] *State ex rel. White v. Neal & Sons, Inc.*, 489 P.2d 1016, 1020 (Alaska 1971), *disapproved of on other grounds by Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109 (Alaska 1990).

[13] *Id.*

[14] *State ex rel. Palmer Supply Co. v. Walsh & Co., Inc.*, 575 P.2d 1213, 1218 (Alaska 1978) (referring to AS 36.25.010).

[15] *SKW/Eskimos, Inc. v. Sentry Automatic Sprinkler Co.*, 723 P.2d 1293, 1297 (Alaska 1986); *see also State ex rel. Smith v. Tyonek Timber, Inc.*, 680 P.2d 1148, 1157 (Alaska 1984) ("The Little Miller Act is the stepchild of the Federal Miller Act . . . . The Alaska Act, like the Federal Act, is clearly remedial in nature. There is no question that a remedial statute is to be liberally construed to effectuate its purposes." (internal citation omitted)); 40 U.S.C. §§ 3131-33 (2018).

(continued...)

### A. Luong Performed "Labor" Under Alaska's Little Miller Act.

#### 1. Under Alaska's Little Miller Act, "labor" is work necessary to the completion of a public works contract.

The United States Supreme Court has long favored a liberal construction of "labor" and "materials" under the Miller Act and its predecessor, the Heard Act.[16] The Court has "repeatedly refused to limit the application of the [A]ct to labor and materials directly incorporated into the public work."[17] For instance, the Court explained in *U.S. Fidelity & Guaranty Co. v. Bartlett* that "bids . . . to show samples of stone and names and locations of quarries to be used as the source of supply" were "necessary to the performance of the contract" and that associated work was "labor."[18] Even

---

[15] (...continued)
Our previous cases have not always consistently applied or characterized the principle that remedial statutes are to be liberally construed. *See, e.g.*, *D.H. Blattner & Sons, Inc. v. N.M. Rothschild & Sons, Ltd.*, 55 P.3d 37, 45 & n.20 (Alaska 2002) (stating that "once the determination of who qualifies as a lienholder is strictly construed," lien law's purpose should "be liberally construed"). *But see, e.g.*, *Whitesides v. U-Haul Co. of Alaska*, 16 P.3d 729, 732 (Alaska 2001) (citing rule to liberally construe remedial statutes as a reason to narrowly construe exemptions to employment protections in the Alaska Wage and Hour Act). Regardless of these inconsistencies, Western Surety has not argued that the liberal construction principle is inapplicable to the Little Miller Act's definition of "labor." In the absence of briefing on the viability and scope of the liberal construction principle in Alaska, we do not decide these issues here.

[16] *See Brogan v. Nat'l Sur. Co.*, 246 U.S. 257, 261-62 (1918) (declaring that the Heard Act "must be construed liberally for the protection of those who furnish labor or materials in the prosecution of public work"); *Fleisher Eng'g & Constr. Co. v. United States ex rel. Hallenbeck*, 311 U.S. 15, 17 (1940) (extending the liberal construction of the Heard Act to its replacement, the Miller Act).

[17] *Brogan*, 246 U.S. at 261-62.

[18] 231 U.S. 237, 243 (1913).

stablehands who did not work at the ultimate site, but rather fed the horses who powered the carts that carried stone to a quarry dock for shipment to the site, performed compensable "labor."[19] Likewise a claimant who furnished the designs used by the contractor in the molding process to make parts for a ship could be compensated for this "labor."[20]

Not all federal courts agree on how to define "labor" under the Miller Act, but they consistently focus their inquiry on the types of tasks performed.[21] Some courts define "labor" as "physical toil."[22] Under this definition, work performed "by a professional, such as an architect or engineer," only qualifies as "labor" if the professional "actually superintends the work as it is done on the job site."[23] Similarly some courts have reasoned that clerical and administrative tasks can never qualify as

---

[19]     *See Brogan*, 246 U.S. at 261-62 (citing *Bartlett*, 231 U.S. at 243).

[20]     *Title Guar. & Tr. Co. v. Crane Co.*, 219 U.S. 24, 34 (1910).

[21]     *See, e.g.*, *United States ex rel. Olson v. W.H. Cates Constr. Co.*, 972 F.2d 987, 991 (8th Cir. 1992) ("Whether [claimant] was or was not a salaried worker as opposed to a hourly wage-earner is not controlling.").

[22]     *United States ex rel. Naberhaus-Burke, Inc. v. Butt & Head, Inc.*, 535 F. Supp. 1155, 1160 (S.D. Ohio 1982) ("While case law interpreting the word 'labor' . . . is relatively sparse, the word has been construed to include physical toil, but not work by a professional, such as an architect or engineer."); *see also Bankers' Sur. Co. of Cleveland, Ohio v. Maxwell*, 222 F. 797, 799 (4th Cir. 1915) (reasoning claimant performed "labor" because his duties involved "physical exertion" and "[b]odily toil").

[23]     *United States ex rel. Naberhaus-Burke, Inc.*, 535 F. Supp. at 1160; *see also United States ex rel. Olson*, 972 F.2d at 990-91 ("[T]he on-site supervisory work of a project manager falls within the purview of the Miller Act if such a superintendent did some physical labor at the job site or might have been called upon to do some on-site manual work in the regular course of his job.").

"labor" because they are insufficiently physical.[24] But not all courts have strictly required supervisory work be performed at the job site to qualify as labor, nor have they defined "labor" with reference to physical toil.[25]

The Eighth Circuit is among those federal courts that require supervisory work to be performed at the job site in order to qualify as "labor" under the Act, limiting the "professional supervisory work . . . covered by the Miller Act" to "skilled professional work which involves actual superintending, supervision, or inspection at the job site."[26] Specifically that court concluded "the on-site supervisory work of a project manager falls within the purview of the Miller Act if such a superintendent did some physical labor at the job site or might have been called upon to do some on-site manual work in the regular course of his job."[27] The Fourth Circuit similarly held that a foreman

---

**24** *See United States ex rel. Constructors, Inc. v. Gulf Ins. Co.*, 313 F. Supp. 2d 593, 597 (E.D. Va. 2004) ("Paying invoices, reviewing proposals, and supervising hiring are clerical or administrative tasks which, even if performed at the job site, do not involve the physical toil or manual work necessary to bring them within the scope of the Miller Act.").

**25** *See Price v. H. L. Coble Constr. Co.*, 317 F.2d 312, 320 (5th Cir. 1963) (interpreting an Alabama statute patterned on the Miller Act to encompass work such as "selecting and securing the workmen" and "making up the payrolls and other reports" presented to the prime contractor).

**26** *United States ex rel. Olson*, 972 F.2d at 990 (quoting *United States ex rel. Naberhaus-Burke, Inc.*, 535 F. Supp. at 1160); *see also Bankers' Sur. Co. of Cleveland, Ohio*, 222 F. at 799-800 (holding claimant's work as foreman, which included some measure of physical toil, to be labor under the Heard Act); *Nat'l. State Bank of Newark v. Terminal Constr. Corp.*, 217 F.Supp. 341, 360-61 (D.N.J. 1963) (observing that supervision constitutes labor under the Miller Act).

**27** *United States ex rel. Olson*, 972 F.2d at 991; *see also United States ex rel. Naberhaus-Burke, Inc.*, 535 F. Supp. at 1160 (concluding plaintiff "can only recover on the payment bond herein (if at all), to the extent that it performed on-site services");

(continued...)

whose duty was "to go among the men and actually build the building" performed labor under the Miller Act, analogizing from the Supreme Court's interpretation of a territorial miner's lien statute.[28]

The Fifth Circuit, instead of relying on the potential need for supervisors to join in physical toil, emphasizes the close link between on-site supervision or inspection and forward progress on the construction project.[29] Under this reasoning, the key inquiry is not whether the work in question physically contributes to construction, but whether the work is "necessary to and forwards" the project.[30] The Fifth Circuit interprets the term "labor" in similar state statutes to encompass the work "of supervisors, engineers and architects" as well as "services performed . . . in overseeing the work, expediting it with a view to minimizing the cost, selecting and securing the workmen, [and] making up the payrolls and other reports."[31]

---

**27** (...continued)
*Nat'l. State Bank of Newark*, 217 F.Supp. at 360-61 (observing that supervision constitutes labor under the Miller Act).

**28** *Bankers' Sur. Co. of Cleveland, Ohio*, 222 F. at 799 ("[P]erformance [of a mining foreman's duties] may well be called work and labor. They require the personal attention and supervision of the foreman, and occasionally in an emergency, or for an example, it becomes necessary for him to assist with his own hands." (quoting *Flagstaff Silver Mining Co. v. Cullins*, 104 U.S. 176, 177-78 (1881))).

**29** *Am. Sur. Co. of N.Y. v. United States ex rel. Barrowagee Labs.*, 76 F.2d 67, 68 (5th Cir. 1935) (reasoning that by "actually superintend[ing] the work as it is done," a supervisor on the site "is by the weight of [his] authority furnishing labor").

**30** *Id.* (holding inspections and testing for compliance with applicable regulations qualified as "labor" under the Act).

**31** *Price v. H. L. Coble Constr. Co.*, 317 F.2d 312, 320 (5th Cir. 1963) (interpreting an Alabama statute patterned on the Miller Act); *cf. Mass. Bonding & Ins.*
(continued...)

The statutory purpose of Alaska's Little Miller Act is to "protect persons who furnish labor or material for a state public works project from the risks of nonpayment," in turn "assur[ing] that material and labor will be readily furnished for [the state's] projects.[32] The value of this labor to the state's projects does not depend on how physically demanding the labor is. We therefore hold "labor" under AS 36.25.020 to include all work that is "necessary to and forwards" the project secured by the payment bond.[33] Accordingly inspections and supervisory work qualify as compensable "labor," in addition to physically-intensive tasks such as pouring concrete or carrying materials to the job site.[34] Whether or not these tasks are performed at the work site itself is not determinative.[35]

---

[31]     (...continued)
*Co. v. Steele*, 293 S.W. 647, 648 (Tex. Civ. App. 1927) (interpreting "labor" in Texas's Little Miller Act to "include[] all bodily or intellectual exertion done for a purpose other than the pleasure derived from the performance," reasoning that supervisory, clerical, and administrative work "is just as essential in the prosecution of the work as is the work of the brickmason or carpenter").

[32]     *SKW/Eskimos, Inc. v. Sentry Automatic Sprinkler Co.*, 723 P.2d 1293, 1297 (Alaska 1986) (quoting *State ex rel. White v. Neal & Sons, Inc.*, 489 P.2d 1016, 1020 (Alaska 1971), *disapproved of on other grounds by Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109 (Alaska 1990)).

[33]     *Am. Sur. Co. of N.Y.*, 76 F.2d at 68.

[34]     *See id.*; *Price*, 317 F.2d at 320 (reading the term "labor" in statutes similar to the Miller Act to encompass the work "of supervisors, engineers and architects").

[35]     *See U.S. Fidelity Co. v. Bartlett*, 231 U.S. 237, 243 (1913) (concluding that labor compensable under the Miller Act included labor at a quarry which shipped stone to the project site).

**2. Luong performed "labor" under Alaska's Little Miller Act at least as late as October 9, 2015.**

Luong furnished labor under Alaska's Little Miller Act by serving as Earth Stone's on-site representative at the project, supervising other workers, and lending an "extra hand" with more strenuous tasks like mixing and pouring concrete. Both parties agree Luong performed compensable labor under the Act on October 9, 2015, when he was one of the two workers to make the final concrete pour.[36] This was physical work performed at the job site and qualifies as "labor" under any court's definition of the term, including our own.

Luong claims to have performed additional labor on October 19, 2015, on which date he claims he made field measurements at the project site. But his journal entry providing evidence of this was not admitted into evidence. Luong further argues that his last day as an employee for Earth Stone, on October 31, 2015, should qualify as "labor" under Alaska's Little Miller Act. But it is not clear from the record whether any later work was necessary to the completion of the project.

**B. The Effective Date Of "Notice" Under AS 36.25.020(b) Is The Date Notice Is Mailed.**

Alaska's Little Miller Act requires a claimant to "giv[e] written notice to the contractor within 90 days."[37] The Act further specifies that "notice shall be served

---

[36]     The trial judge made no findings of fact to the contrary. He noted that Luong's exhibits indicated his last day of work for Earth Stone on the job site was October 9, and said if October 9 were within the 90-day notice period, he would deny Western Surety's motion for a directed verdict.

[37]     AS 36.25.020(b).

by mailing it by registered mail . . . or in any manner in which a peace officer is authorized to serve summons."[38]

Both parties agree that Luong performed compensable labor on October 9, 2015. He presented evidence that he mailed notice of his claim by registered mail 89 days later on January 6, 2016, but Pinnacle did not receive that notice until January 11, 94 days after the last date of labor. Since the applicable statutory deadline for providing notice is 90 days from the last date of labor, Luong's claim is viable as long as the date of effective notice under the Little Miller Act is the date notice is sent, not the date notice is received.

Looking again to cases interpreting the federal Miller Act, there is no clear consensus on when notice is effective. Western Surety argues that despite the Act's general purpose of protecting laborers and suppliers, the 90-day notice provision is intended to protect prime contractors. Western Surety cites a Ninth Circuit decision, *United States ex rel. Blue Circle West, Inc. v. Tucson Mechanical Contracting Inc.*, as evidence that a federal court agrees with its approach.[39]

The specific purpose of the 90-day notice requirement in the Miller Act, as articulated in *Blue Circle West*, is "to fix a time limit after which the prime contractor could make payment to the subcontractor with certainty that he would not thereafter be faced by claims of those who had supplied labor and materials to the subcontractor."[40] But *Blue Circle West* does not exempt the notice requirement from the general rule of

---

[38]     *Id*.

[39]     921 F.2d 911, 914-15 (9th Cir. 1990) (holding claimant's letters were not specific enough to provide notice as they failed to give any indication claimant was looking to the prime contractor for payment).

[40]     *Id*. at 914 (quoting *Bowden v. United States ex rel. Malloy*, 239 F.2d 572, 577-78 (9th Cir. 1956), *cert. denied*, 353 U.S. 957 (1957)).

liberal construction; it simply holds that liberal construction cannot erase the notice requirement entirely.[41]

The Fourth Circuit described the notice provision's purpose of providing "protection to the prime contractor" as "subsidiary to the main purpose of the act to protect those whose labor and materials enter into the prosecution of the work."[42] The Fourth Circuit thus reasoned: "[I]f there be any ambiguity in the provisions relating to the minor purpose, it should be resolved in support of the main object of the law," in order to be "in harmony with" the clearly established directive to construe the statute liberally to effect its remedial purpose.[43] However the Supreme Court has since cast doubt on the liberal construction principle's applicability to provisions that cut against a statute's general remedial purpose.[44]

---

[41] *Id*. at 911, 916 ("[N]o rule of liberality in construction can justify reading out of the statute the very condition which Congress laid down as prerequisite to the cause of action." (quoting *Bowden*, F.2d at 577-78)); *see also Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 107 (1944) (explaining liberal construction of Miller Act "does not justify ignoring plain words of limitation" while construing "subcontractor" term). *But see Fleisher Eng'g & Constr. Co. v. United States ex rel. Hallenbeck*, 311 U.S. 15, 18 (1940) ("In giving the statute a reasonable construction in order to effect its remedial purpose, we think that a distinction should be drawn between the provision explicitly stating the condition precedent to the right to sue and the provision as to the manner of serving notice.").

[42] *Noland Co. v. Allied Contractors, Inc.*, 273 F.2d 917, 920-21 (4th Cir. 1959) (holding notice given within 90 days from date of delivery under last order was timely with respect to a series of deliveries).

[43] *Id*.

[44] *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (warning against narrowly construing exemptions to the Fair Labor Standards Act's requirements despite the Act's generally remedial character, as the exemptions also constitute part of the law's purpose).

Notwithstanding these principles of construction, the Fourth Circuit itself has interpreted notice to be timely only when received within 90 days. In *Pepper Burns Insulation, Inc. v. Artco Corp.*, the Fourth Circuit interpreted the statutory condition of "giving" notice to mean that notice must be "put in the possession of the contractor."[45] The Fourth Circuit reasoned that had Congress intended notice to be effective upon mailing, it could have instead granted a cause of action "upon written notice" or "upon mailing written notice."[46] And the Fourth Circuit considered the 90-day period's purpose best served by "provid[ing] contractors with a date certain after which they are no longer at risk of liability to second-tier subcontractors . . . [thereby] facilitat[ing] payments to first-tier subcontractors and closure of the project finances."[47]

Western Surety cites a number of other cases to claim that the majority of jurisdictions interpret notice under the Miller Act as effective only when received. But many of the cases cited by Western Surety do not squarely analyze the issue.[48] For

---

[45] 970 F.2d 1340, 1343 (4th Cir. 1992).

[46] *Id.*

[47] *Id.* at 1343-44.

[48] *See United States ex rel. Hillsdale Rock Co. v. Cortelyou & Cole, Inc.*, 581 F.2d 239, 243 (9th Cir. 1978) (holding actual notice within the 90-day period to satisfy the notice requirement even though claimant used regular rather than registered mail); *United States ex rel. Greenwald-Supon, Inc. v. Gramercy Contractors, Inc.*, 433 F. Supp. 156, 163 (S.D.N.Y. 1977) (stating "the Miller Act should be liberally construed, so long as notice, however conveyed, 'reach[es] the party sought to be held by the notice within the statutory time for its receipt' " while holding notice even by unregistered mail is sufficient as long as received within the 90-day period (quoting *United States ex rel. Gen. Elec. Co. v. H.I. Lewis Constr. Co.*, 375 F.2d 194, 200 (2d Cir. 1967))); *United States ex rel. Excavation Constr., Inc. v. Glenn-Stewart-Pinckney Builders & Devs. Inc.*, 388 F. Supp. 289, 296 (D. Del. 1975) (holding letter neither sent nor received within 90 days after the last day of labor could not satisfy the Miller Act's timely notice
(continued...)

-16- 7519

instance, in *United States ex rel. General Electric Co. v. H.I. Lewis Construction Co.*, the Second Circuit mentioned its "belief that [claimant's] notice, however conveyed, must reach the party . . . within the statutory time for its receipt."[49]  But what the Second Circuit actually held was that the 90-day notice requirement "is mandatory and is a strict condition precedent" to a successful claim under the Miller Act, and thus that delivery of new materials, not furnished under "the original contract[,] cannot revive a Miller Act liability extinguished by the expired ninety-day period."[50]  In fact, when the Eastern District of New York held notice sent using registered mail within the 90-day period was timely under the Miller Act, even if the notice was not received during that period, the Second Circuit affirmed the decision.[51]

Other federal courts have assumed notice to be timely as long as it is sent during the 90-day statutory period.[52]  The Eastern District of Louisiana explicitly held that notice under the Miller Act was effective when sent, characterizing the Miller Act's

---

**48**      (...continued)
requirement).

**49**      375 F.2d at 199-200 ("[O]nce ninety days have elapsed without . . . notice, [the contractor] is free to pay the subcontractor for the latter's work without risk of liability under his bond to laborers . . . [of his] subcontractor.").

**50**      *Id.* at 201.

**51**      *United States ex rel. Lincoln Elec. Prod. Co. v. Greene Elec. Serv. of Long Island, Inc.*, 252 F. Supp. 324, 328 (E.D.N.Y. 1966), *aff'd*, 379 F.2d 207 (2d Cir. 1967) (upholding district court's finding of timely notice as not clearly erroneous).

**52**      *See Romona Equip. Rental, Inc. ex rel. U.S. v. Carolina Cas. Ins. Co.*, 755 F.3d 1063, 1066-67 (9th Cir. 2014) (referring to "service of the notice" and the date written notice was "sent" under the Miller Act); *Apache Powder Co. v. Ashton Co.*, 264 F.2d 417, 423 (9th Cir. 1959) (discussing date letter was sent by registered mail as giving notice to prime contractor).

notice requirement as "the general contractor's 'offer' to third-tier contractors," and the claimant's letter as an acceptance of that offer.[53] Under this contract analogy, the parties are subject to the standard mailbox rule where acceptance is complete when mailed.[54] The Eastern District of Louisiana also noted that as a matter of statutory construction, where "service of notice by registered mail is expressly authorized by statute, service is effected when the notice is properly addressed, registered, and mailed."[55]

Multiple state supreme courts have held notice under their states' analog to the Miller Act to be complete once properly sent via registered mail. The Michigan Supreme Court recently concluded that service under the Michigan public works bond act "is accomplished when a complainant mails the required information to the proper destination by certified mail within the required time frame," even if the notice is not received during that 90-day period.[56] The Maryland Court of Appeals acknowledged that its verison of the Miller Act could reasonably be interpreted as making notice effective when either sent or received.[57] But the Maryland court was convinced that the

---

[53] *United States ex rel. Crowe v. Cont'l Cas. Co.*, 245 F. Supp. 871, 873 (E.D. La. 1965).

[54] *Id.*

[55] *Id.*; *see also Grubbs v. Prince George's Cty.*, 297 A.2d 754, 757 (Md. App. 1972) (adopting the same reasoning for a similarly worded statute in a personal injury context).

[56] *Wyandotte Elec. Supply Co. v. Elec. Tech. Sys., Inc.*, 881 N.W.2d 95, 101 (Mich. 2016).

[57] *Montgomery Cty. Bd. of Ed. ex rel. Carrier Corp. v. Glassman Constr. Co.*, 225 A.2d 448, 453 (Md. App. 1967).

detailed description of the prescribed manner of service implied legislative intent that "mailing of the notice tolls the statutory period."[58]

The Supreme Court of the United States has never squarely addressed this issue. But in *Fleisher Engineering & Construction Co. v. United States ex rel. Hallenbeck*, the Court reasoned that, by providing for registered mail as the presumptive method of notice, "Congress intended to provide a method which would afford sufficient proof of service when receipt of the required written notice was not shown."[59] This implies laborers who properly sent notice by registered mail would still have a Miller Act claim even without proof of actual receipt. Extending that logic, if proof of actual receipt is not required to bring a Miller Act claim, then the date of notice should not be defined as the date of receipt.

Additionally when *Fleisher* was decided in 1940, the federal Miller Act's notice provision mirrored the equivalent provision in Alaska's Little Miller Act.[60] The

---

[58] *Id.* at 454 ("Not only must postage be prepaid, but ordinary mail is not sufficient; the notice must be sent by registered or certified mail.").

[59] 311 U.S. 15, 18-19 (1940) (citing Miller Act of 1935, ch. 642, § 2(a), 49 Stat. 794 (current version at 40 U.S.C. § 3133(b)(2))) (holding, in a case where actual notice was not contested, that the use of regular mail rather than registered mail did not nullify an otherwise proper claim).

[60] *Compare* Miller Act of 1935, ch. 642, § 2(a), 49 Stat. 794 (current version at 40 U.S.C. § 3133(b)(2)) ("Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop[e] addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons."), *with* AS 36.25.020 ("The notice shall be served by mailing it by registered mail, postage prepaid, in an envelope addressed to the contractor at any place where the contractor maintains an office or conducts business, or the contractor's residence, or in any manner in which a peace officer is authorized to

(continued...)

federal Act has since been amended to read: "notice shall be served . . . by any means that provides written, third-party verification of delivery to the contractor," or in any manner in which the specified official is authorized to serve summons.[61] This new version shifts the focus from actions performed by the claimant ("mailing . . . by registered mail, postage prepaid, in an envelope addressed to the contractor") to confirmation of receipt by the contractor ("any means that provides written, third-party verification of delivery").[62]

But AS 36.25.020's notice provision still concentrates on the claimant's actions. The statute requires the claimant to "giv[e] written notice . . . within 90 days" and specifies exact directions claimants can follow to "serve" that notice: "mailing it by registered mail, postage prepaid, in an envelope addressed to the contractor."[63] As long as the claimant follows those directions, the contractor should be able to timely pay its subcontractors, free from the risk of conflicting Miller Act claims.[64]

---

[60]     (...continued)
serve summons.").

[61]     Act of Aug. 17, 1999, Pub. L. No. 106-49, § 2(b), 113 Stat. 231 (codified as amended at 40 U.S.C. § 3133(b)(2)).

[62]     *Compare* Miller Act of 1935, ch. 642, § 2(a), 49 Stat. 794, *with* 40 U.S.C. § 3133(b)(2).

[63]     AS 36.25.020(b).

[64]     *See United States ex rel. Crowe v. Cont'l Cas. Co.*, 245 F. Supp. 871, 873 (E.D. La. 1965) (holding under the 1935 version of the federal notice requirement that the mailing date is effective, as the two methods of service specified by the statute "both guarantee verification through an uninterested party of the date notice was dispatched, thereby precluding factual controversies on questions relating to date of sending and date of receipt").

Interpreting notice as effective upon mailing adequately preserves the 90-day deadline's specific purpose — to allow the prime contractor to make timely payments to subcontractors without risking conflicting claims from the subcontractor's employees and suppliers. It also advances the statute's underlying purpose — to protect laborers and suppliers from the risk of nonpayment on public works projects.[65] We therefore hold notice under Alaska's Little Miller Act is complete once mailed to the contractor via registered mail.

Luong presented testimony and an exhibit indicating he served notice on Pinnacle on January 6, 2016, within 90 days of the labor he performed on October 9, 2015.[66] Luong therefore presented sufficient evidence to raise an issue of fact as to whether he provided notice within the statutory 90-day period, and the trial court erred by granting Western Surety a directed verdict on this issue.

---

[65] *See Noland Co. v. Allied Contractors, Inc.*, 273 F.2d 917, 920-21 (4th Cir. 1959) ("[I]f there be any ambiguity in the provisions relating to the minor purpose, it should be resolved in support of the main object of the law.").

[66] The district court did not seem to consider the date the letter was sent to be relevant to its inquiry under the Little Miller Act, and so did not evaluate the sufficiency of the evidence on this point. Luong's testimony indicates the letter was sent January 6, the letter from Luong's then-attorney was dated January 6, and Western Surety has presented no evidence contradicting that date. Furthermore the letter traveled all the way from California to Alaska, and arrived by January 11; this date of receipt "is entirely compatible with the letter having been sent on the date it bears." *Montgomery Cty. Bd. of Ed. ex rel. Carrier Corp. v. Glassman Constr. Co.*, 225 A.2d 448, 453 (Md. App. 1967) (holding sufficient proof that claimant's letter "was mailed within the 90 day period" to survive motion to dismiss).

## V.    CONCLUSION

We REVERSE the superior court's denial of Luong's appeal, VACATE the judgment against Luong and the award of attorney's fees,[67] and REMAND for further proceedings.

---

[67]    Western Surety must return any funds it has already garnished from Luong.